**Richmond**

RYAN O'NEAL DEER

v.

COMMONWEALTH OF VIRGINIA

No. 1326-92-2

Decided February 22, 1994

COUNSEL

C. David Whaley (Anthony G. Spencer; Morchower, Luxton & Whaley on brief), for appellant.

Eugene Murphy, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, J.**—In a bench trial, Ryan O'Neal Deer (Deer) was convicted of possession of cocaine with intent to distribute. Code § 18.2-248. Deer contends the trial court erred in failing to suppress evidence obtained in violation of his Fourth Amendment right against

unreasonable warrantless searches and seizures. For the reasons that follow, we reverse Deer's conviction.

## I.

## FACTUAL BACKGROUND

On October 15, 1991, Trooper M. E. Thomas (Thomas) of the Virginia State Police stopped a car driven by Deer for travelling fourteen miles per hour over the posted speed limit. Deer provided Thomas with a car registration in the name of a third party, but stated that he did not have an operator's permit. Thomas asked Deer to leave the vehicle and accompany Thomas to his cruiser. At the cruiser, Deer gave as his own the name, address and social security number of Paul Bridgemahan. Deer gave hesitant and conflicting answers when asked to provide his middle name and birth date. Thomas used the social security number in an attempt to identify Deer as Bridgemahan through DMV, but was unable to receive confirmation. Thomas issued a citation for speeding, and Deer signed the summons as Paul Bridgemahan.[1]

Deer appeared nervous, arousing Thomas' suspicions. Thomas followed Deer back to his car and requested that he be allowed to search the vehicle. Deer at first refused to allow the search, but agreed when Thomas said that he would detain the vehicle and call for a K-9 drug unit. Thomas told Deer that he might have to wait for up to an hour for the unit to arrive.

Thomas began a search of the vehicle, but when he found a brown paper bag in a floorboard console, Deer demanded that Thomas end the search. Thomas again advised Deer that he would detain the vehicle and send for the K-9 unit. Deer grabbed the paper bag and fled on foot into a nearby wooded area.

Thomas pursued and captured Deer, recovering the paper bag. Upon returning to the car, Thomas discovered that the bag contained a quantity of a white powdered substance, later identified as approximately sixty grams of cocaine.

---

[1] From the record it does not appear that Thomas cited Deer for failure to carry a license, Code § 46.2-104, nor is it clear whether Deer actually had a driver's license. Failure to carry a license is a non-criminal traffic infraction that would not warrant arrest of the individual or detention of his vehicle.

Immediately prior to trial, the court heard Deer's motion to suppress the evidence of the search and all subsequent events resulting from his request that the search end. After hearing evidence from Thomas, the court denied the motion. During argument of the motion, the Commonwealth conceded that at the time of the vehicle search, Thomas lacked probable cause to suspect that Deer had committed a crime.

The Commonwealth called Thomas as its only witness. Deer declined to put on evidence. The trial court convicted Deer and sentenced him to thirty years in prison with twenty-five years suspended on the charge of possession with intent to distribute.[2]

## II.

### LAWFUL SEIZURE

The stop of a vehicle on a highway and detention of the driver constitutes a seizure within the meaning of the Fourth Amendment, even though the stop is limited and the detention brief. *Castaneda v. Commonwealth*, 7 Va. App. 574, 579, 376 S.E.2d 82, 84-85 (1989) (en banc); *see also Lowe v. Commonwealth*, 230 Va. 346, 349, 337 S.E.2d 273, 275 (1985), *cert. denied*, 475 U.S. 1084 (1986). The mere fact of a seizure does not render incompetent any evidence obtained as a result. Rather, courts must judge the reasonableness of the seizure in light of the particular circumstances. *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

In *United States v. Cortez*, 449 U.S. 411 (1981), the United States Supreme Court outlined the two elements which must be present before a stop is permissible:

First, the assessment must be based upon all of the circumstances. The analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions—inferences and deductions that might well elude an untrained person.

\* \* \* \* \* \* \*

---

[2] The trial court also convicted Deer of felony forgery of a traffic summons. Code § 18.2-172. By order entered on April 6, 1993, a panel of this Court denied Deer's petition for appeal of that offense.

The second element contained in the idea that an assessment of the whole picture must yield a particularized suspicion is the concept that the process just described must raise a suspicion that the particular individual being stopped is engaged in wrongdoing.

*Id.* at 418.

■ Courts must apply objective standards in determining whether the requisite degree of suspicion exists, taking into account that "trained law enforcement officers may be 'able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer.'" *United States v. Gooding*, 695 F.2d 78, 82 (4th Cir. 1982). Attention must be focused on objective reasonableness rather than on the police officer's subjective intent. As the Supreme Court explained in *Terry:*

The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?

392 U.S. at 21-22 (footnote omitted).

### III.

### CONSENT SEARCHES

■ In *Bumper v. North Carolina*, 391 U.S. 543 (1968), the United States Supreme Court held that the Fourth Amendment right to be free from unreasonable seizures may be waived, orally or in writing, by voluntary consent to a warrantless search of a person, property or premises. 391 U.S. at 548; *see also Coleman v. Commonwealth*, 226 Va. 31, 49, 307 S.E.2d 864, 874 (1983), *cert. denied*, 465 U.S. 1109 (1984). Implicit in the waiver of the warrant requirement is the waiver of the requirement of probable cause.

■ The test of a valid consent search is whether it was "freely and voluntarily given." *Bumper*, 391 U.S. at 548; *see also Reynolds v.*

*Commonwealth*, 9 Va. App. 430, 439, 388 S.E.2d 659, 665 (1990); *Limonja v. Commonwealth*, 8 Va. App. 532, 540, 383 S.E.2d 476, 481 (1989) *(en banc)*, *cert. denied*, 495 U.S. 905 (1990); *Richards v. Commonwealth*, 8 Va. App. 612, 615-16, 383 S.E.2d 268, 270 (1989). The burden rests with the Commonwealth to demonstrate the lack of duress. *Lowe v. Commonwealth*, 218 Va. 670, 678, 239 S.E.2d 112, 117 (1977), *cert. denied*, 435 U.S. 930 (1978); *Hairston v. Commonwealth*, 216 Va. 387, 388, 219 S.E.2d 668, 669 (1975), *cert. denied*, 425 U.S. 937 (1976). The question of whether a particular "consent to a search was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). Police need not warn the suspect that he has a right to refuse the search, but the suspect's knowledge of his right to refuse falls within the totality of the circumstances the court must consider. *Id.*; *see also United States v. Watson*, 423 U.S. 411, 424 (1976); *Limonja*, 8 Va. App. at 540, 383 S.E.2d at 481.

■ The fact that the defendant has been lawfully seized at the time consent is given does not in itself invalidate the consent. *Reynolds*, 9 Va. App. at 439, 388 S.E.2d at 665. However, where police use coercion under the color of lawful authority, the consent will most likely be invalid. Consent is not voluntary if given to police falsely claiming to have a warrant or serving an invalid warrant. *See Bumper*, 391 U.S. at 550 (false claim); *McMillon v. Commonwealth*, 212 Va. 505, 507, 184 S.E.2d 773, 775 (1971) (consent not given if search warrant, later found to be invalid, was first served). A suspect does not consent to a search by acquiescing to a claim of lawful authority; however, merely informing a suspect that police can obtain a warrant does not vitiate consent. *Compare Crosby v. Commonwealth*, 6 Va. App. 193, 199, 367 S.E.2d 730, 733-34 (1988) (not consent to surrender key to apartment because police said they would otherwise obtain a search warrant) *with Bosworth v. Commonwealth*, 7 Va. App. 567, 571, 375 S.E.2d 756, 758-59 (1989) (stating that if K-9 unit dog alerted on vehicle a warrant could be obtained did not amount to coercion).

## IV.

### DEER'S CASE

It is clear that the initial stop of Deer's vehicle was proper. Although the length of the stop exceeded the normal time for a routine traffic stop, the circumstances required the trooper to take extra

precautions in his investigation. However, once Thomas had completed his investigation and issued the citation, the continued detention of Deer and the vehicle required additional justification to satisfy the requirements of the Fourth Amendment.

The question presented here is whether Thomas would have been justified in detaining Deer until the K-9 unit could arrive to survey the vehicle. The Commonwealth concedes that Thomas did not have probable cause to believe that Deer was engaged in criminal activity when he first requested the consent to search. When Deer refused that request, Thomas effected a seizure by stating that he would detain the vehicle for up to an hour to await the arrival of a K-9 unit. If that seizure was not based upon an articulable suspicion that Deer was involved in criminal activity, Deer's further detention was illegal.

■ We recognize that "[t]he level of suspicion required [to detain a suspect] is less demanding than the standard of probable cause." *Richards*, 8 Va. App. at 616, 383 S.E.2d at 270 (citation omitted); *see also Quigley v. Commonwealth*, 14 Va. App. 28, 33, 414 S.E.2d 851, 854 (1992). In this case, however, the facts that Thomas relied upon amount to no more than an "inchoate and unparticularized suspicion or 'hunch.'" *Terry*, 392 U.S. at 27. Accordingly, the detention of Deer and his vehicle beyond the time necessary to issue the traffic citation was not permitted under the Fourth Amendment.

The Commonwealth contends that Deer's consent to search in effect cures the illegal nature of the seizure. We disagree. Inasmuch as Thomas coupled his statement effecting the illegal seizure with a renewed demand to search the vehicle, Deer's consent was not voluntarily given. Deer was responding to "coercion under the color of lawful authority" that had no legal basis.[3] Therefore, the search was also illegal.

Assuming arguendo that Deer's consent was not coerced, it still would not cure the illegality of the seizure. Deer's continuing presence on the shoulder of the highway was a direct result of the illegal seizure. The consent to search that followed, voluntary or otherwise, was a fruit of that illegal seizure.

---

[3] We distinguish this case from *Bosworth*, 7 Va. App. at 571, 375 S.E.2d at 758-59, on the ground that when Thomas asserted he would send for the K-9 unit he had no reasonable suspicion that would warrant using the dogs to alert on the vehicle. In *Bosworth*, there was no contention that the stop of the defendant's vehicle was an illegal seizure or that the officers lacked reasonable suspicion.

Evidence obtained as a direct result of an unconstitutional search or seizure is plainly subject to exclusion. The question to be resolved when it is claimed that evidence subsequently obtained is "tainted" or is "fruit" of a prior illegality is whether the challenged evidence was "come at by exploitation of [the initial] illegality or instead by means *sufficiently distinguishable* to be purged of the primary taint."

*Segura v. United States*, 468 U.S. 796, 804-05 (1984) (quoting *Wong Sun v. United States*, 371 U.S. 471, 488 (1963)); *accord Commonwealth v. Ealy*, 12 Va. App. 744, 754-55, 407 S.E.2d 681, 687-88 (1991).

The Commonwealth also contends that Deer broke the chain of causality when he took the paper bag and fled from the scene. *See Quigley*, 14 Va. App. at 33, 414 S.E.2d at 854. We disagree. Deer's flight and the search following his recapture were directly linked to the primary taint of the illegal seizure and the coerced search. Deer's flight was prompted by Thomas' renewed claim of authority to hold the vehicle for up to an hour while awaiting the arrival of the K-9 unit. These events flowed one from the other with no discernable break in the chain of causation.

For these reasons, we hold that the trial court erred in failing to suppress the cocaine obtained as a result of an illegal seizure and subsequent involuntary consensual search. Without that evidence, there is no basis for the Commonwealth to maintain its prosecution. Accordingly, Deer's conviction for possession with intent to distribute is reversed and the charge is dismissed.

*Reversed and dismissed.*

Benton, J., and Willis, J., concurred.