COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Willis and Bray
Argued at Richmond, Virginia


GEORGE EUGENE ROBINSON

v.  Record No. 1754-94-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE JAMES W. BENTON, JR.
MARCH 19, 1996

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
Mosby G. Perrow, III, Judge

James G. Hunter, III (O'Keeffe & Spies, on
brief), for appellant.

Eugene Murphy, Assistant Attorney General
(James S. Gilmore, III, Attorney General, on
brief), for appellee.


George Eugene Robinson was convicted of possession of cocaine with intent to distribute in violation of Code § 18.2-248 and possession with intent to distribute of more than one-half ounce but less than five pounds of marijuana in violation of Code § 18.2-248.1(a)(2).  He contends the trial judge erred in failing to suppress numerous items of evidence and in admitting a certificate of analysis.  We affirm the convictions.

SUPPRESSION HEARING

On appeal from a denial of a motion to suppress, "[t]he burden is upon [Robinson] to show that [the trial judge's] ruling, when the evidence is considered most favorably to the Commonwealth, constituted reversible error."  Fore v.

_____

[*]Pursuant to Code § 17-116.010 this opinion is not designated for publication.

Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731, cert. denied, 449 U.S. 1017 (1980). The evidence at the hearing proved Police Officer W. K. Dance applied to a magistrate for a warrant to search a specific apartment in the City of Lynchburg. Officer Dance's affidavit recited that drugs were in the apartment and that the information contained in the affidavit was provided by a confidential informant. The magistrate issued the warrant.

Shortly before the search warrant was executed, Robinson arrived at the apartment. After the police entered to search the apartment, they found Robinson sitting at the kitchen table and forced him to lie on the floor. When Officer Dance arrived in the kitchen Robinson was on the floor. Officer Dance testified that he arrested Robinson after he saw a green plant material in a ziplock bag hanging out of Robinson's coat pocket. During his search of Robinson, Officer Dance recovered money, cocaine, razor blades, keys, including a key to a motel room, and a pager.

Officer Dance did not give Miranda warnings to Robinson then or at any time in the apartment. He testified that he told Robinson "that he should not say anything until [he] got to the station and signed an [advice] of rights form or until he talked to a lawyer." He handcuffed Robinson and joined in the search of the apartment.

As the officers searched the apartment, Robinson asked to speak to Officer Dance in private. When Officer Dance took Robinson into the bathroom to talk, Robinson became tearful and

upset. He testified that Robinson became more upset when an officer entered the room and reported that a drug dog had arrived and was ready to go around a van that was parked outside the apartment. Robinson asked to urinate. Officer Dance opened Robinson's pants and assisted him.

During Robinson's discussion with Officer Dance, Officer Dance questioned Robinson about the presence of cocaine in the van. Robinson told him that cocaine and scales were under a seat in the van. Officer Dance informed the other officer of Robinson's statements. Officer Dance testified that the dog alerted to the presence of drugs in the van before the police entered and searched the van.

In further conversation, Robinson told Officer Dance that he had cocaine in the motel room in his locked suitcase. After Robinson signed a consent form for a search of the motel room, the police went to the motel room and seized a suitcase from a female who was standing outside the room. Officer Dance used one of Robinson's keys to open the suitcase. He found cocaine, marijuana, and money in the suitcase.

Officer Dance then went to the police station where Robinson had been taken. He read Miranda warnings to Robinson for the first time. Robinson signed a waiver of his rights and made further statements.

At the suppression hearing, the Commonwealth conceded that the statements Robinson made at the apartment were not admissible

in the Commonwealth's case-in-chief.  In ruling on the motion to suppress, the trial judge upheld the validity of the search warrant, ruled that the drugs in the van inevitably would have been discovered, found that Robinson's consent to the search of his motel room was free, voluntary, and intelligent, and ruled that the statements Robinson made after receiving <u>Miranda</u> warnings were admissible.

a. <u>Search warrant</u>

Relying principally upon <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), Robinson contends that the search warrant was issued upon information in the affidavit that Officer Dance knew or should have known was false.  In <u>Franks</u>, the Supreme Court held as follows:

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.  In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

438 U.S. at 155-56.

The record establishes that the magistrate approved the

warrant based upon a factually accurate affidavit. Although Dance's affidavit did not disclose that the informant had a criminal record or was paid by the police for information, a search warrant application need not include all of the facts known to the officer. United States v. Liberti, 616 F.2d 34, 37 (2nd Cir.), cert. denied, 446 U.S. 952 (1980). The omission of information from an affidavit does not automatically invalidate a search warrant. Id.

In the affidavit, Officer Dance represented that a confidential, reliable informant familiar with cocaine saw cocaine in the residence within twenty-four hours of the affidavit. He stated that the informant had given him information in the past that was corroborated by other informants who have given information that led to cocaine possession arrests and convictions. Although the recitations in the affidavit concerning the informant were skimpy, the evidence in this record failed to prove that the omission of more detailed information concerning the informant was the result of "perjury or reckless disregard" for the truth. Franks, 438 U.S. at 156.

Robinson also argues that the search warrant was issued without probable cause. We disagree.

> In making a probable cause determination, "[t]he task of the issuing magistrate is simply to make a practical, commonsense decision, whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a

crime will be found in a particular place."
The duty of a reviewing court, on the other
hand, is "simply to ensure that the
magistrate had a 'substantial basis for . . .
conclud[ing]' that probable cause existed."
Thus, the magistrate's determination of
probable cause should be afforded great
deference on appellate review.  Moreover,
even if the warrant was not issued upon
probable cause, evidence seized pursuant to
the warrant is nevertheless admissible if the
officer executing the warrant reasonably
believed that the warrant was valid.

Lanier v. Commonwealth, 10 Va. App. 541, 547, 394 S.E.2d 495, 499
(1990)(citations omitted).  We conclude that when viewed under
the "totality of the circumstances," the magistrate had
substantial basis to conclude that probable cause existed.
Illinois v. Gates, 462 U.S. 213, 238 (1983).

### b. Search of Robinson

Robinson argues that the record proved that he was illegally
seized when he was held and searched in the apartment.  We
disagree.  The principle is well established that when the police
conduct a search pursuant to a warrant, they may detain the
occupants of the place that is being searched.  Michigan v.
Summers, 452 U.S. 692, 705 (1981).

Viewed in the light most favorable to the Commonwealth, the
party that prevailed at the suppression hearing, Commonwealth v.
Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991), the
evidence proved that Robinson was inside the apartment when the
police arrived with the search warrant.  Robinson was being
lawfully detained during the search of the apartment when Officer

Dance saw a bag of marijuana protruding from his pocket.  The arrest and search that followed the discovery of the marijuana were lawful.  See Wright v. Commonwealth, 222 Va. 188, 192-93, 278 S.E.2d 849, 852 (1981).

### c.  Robinson's statements

The Commonwealth conceded at the suppression hearing that the statements Robinson made in the apartment before he received Miranda warnings were not admissible at trial.  Consistent with the Commonwealth's concession, the trial judge entered an order barring the use of those statements.

Robinson contends, however, that the failure of the police to give him Miranda warnings in the apartment, when coupled with other police conduct, so tainted the process that statements he later made after receiving Miranda warning were inadmissible.  In response, the Commonwealth argues that Oregon v. Elstad, 470 U.S. 298 (1985), plainly supports the trial judge's ruling that the statements Robinson made after he received Miranda warnings were admissible.  We agree that Elstad controls the decision in this case.

In Elstad, the Supreme Court reached the following conclusion:

> [A]bsent deliberately coercive or improper tactics in obtaining the initial statement, the mere fact that a suspect has made an unwarned admission does not warrant a presumption of compulsion.  A subsequent administration of Miranda warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement.  In such circumstances, the finder of fact may reasonably conclude that the suspect made a rational and intelligent choice whether to waive or invoke his rights.

470 U.S. at 314.

The record does not establish, as Robinson contends, that the police used coercion to gain statements from him in the apartment. The evidence proved that after Robinson was arrested he asked to speak to Officer Dance. He was visibly upset concerning his predicament and lamented the impact of his arrest on his family. Although the record contains no explanation for Officer Dance's failure to give <u>Miranda</u> warnings at that time, that failure, standing alone, did not amount to coercion. <u>See</u> <u>Elstad</u>, 470 U.S. at 315-16.

Robinson argues that the police conduct was coercive because they would not free his hands to allow him to urinate. Although Robinson may have found Officer Dance's assistance unpleasant, we find no basis to hold that this act coerced Robinson into confessing. Robinson was not deprived of the opportunity to perform his bodily function. Moreover, in view of the testimony that Robinson became emotionally upset, we cannot say that the officer was unreasonable in not removing Robinson's handcuffs.

The record supports the Commonwealth's argument that Robinson became emotional because of his arrest for drugs and not because of coercion or any overpowering police presence. Thus, the trial judge did not err in finding no evidence of police coercion and refusing to suppress the subsequent warned statements because of Robinson's emotional state.

### d. <u>Search of the vehicle</u>

Robinson argues that the search of his van violated his

fourth amendment rights because the van was not within the curtilage of the apartment. The evidence proved that a trained dog "alerted" for drugs at the driver's side door of the van. "[T]he action of the narcotics dog gave the police probable cause to make the search." Brown v. Commonwealth, 15 Va. App. 1, 6, 421 S.E.2d 877, 881 (1992)(en banc). Furthermore, the evidence proved that the dog was being prepared to go around the exterior of the van. Thus, the evidence supports the trial judge's finding that the police learned from a source independent of Robinson's statements that cocaine was in the van.

### e. Search of the luggage

Robinson informed the police that drugs could be found in the suitcase in his motel room and signed a consent form for the search of the room. "The question of whether a particular 'consent to a search was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances.'" Deer v. Commonwealth, 17 Va. App. 730, 735, 441 S.E.2d 33, 36 (1994) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973)). "The fact that [Robinson] has been lawfully seized at the time consent is given does not in itself invalidate the consent." Deer, 17 Va. App. at 735, 441 S.E.2d at 36. No evidence proved that the police coerced Robinson into consenting to the search. Robinson gave free and voluntary consent to search the room and its contents.

The evidence proved that a woman standing outside of the motel room gave the police the suitcase and disclaimed ownership. Officer Dance opened the suitcase and saw the drugs. On these facts, the trial judge did not err in admitting evidence found in the suitcase.

ADMISSION OF CERTIFICATE OF ANALYSIS

At trial, Robinson objected to the admission in evidence of the certificate of analysis of the marijuana and cocaine. He contends that the certificate of analysis was inadmissible on two grounds.

Relying upon Hill v. Commonwealth, 17 Va. App. 480, 438 S.E.2d 296 (1993), he claims that under Code § 54.1-3401 the laboratory should have excluded any seeds and stalks prior to weighing the marijuana. Although the decision does address the weighing of marijuana, the holding in Hill addressed the sufficiency of evidence to prove the elements of the offense, not the admissibility of evidence. Id. at 485, 438 S.E.2d at 299.

To the extent that the certificate of analysis proved the identity of the substances seized from Robinson, it was relevant. Admissibility of relevant evidence is within the sound discretion of the trial judge. Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988). The record does not suggest that he abused that discretion in admitting the certificate to prove the identity of the substances.

Robinson also claims that the trial judge erred in admitting

- 11 -

the certificate because it related to drugs found outside of the City of Lynchburg.  The certificate of analysis listed the type and weight of the drugs found on Robinson's person, in the apartment, in the van, and in the suitcase.  Although the police seized the suitcase in Campbell County, and Robinson was prosecuted in the City of Lynchburg, the rule of venue does not require that all evidence in a particular case must come from only one jurisdiction.

The Commonwealth had the burden to prove that Robinson intended to distribute the cocaine and marijuana.  The introduction of the large amount of drugs and money found in the suitcase tended to prove the hypothesis that Robinson intended to distribute the drugs found in the apartment and van.  See Jennings v. Commonwealth, 20 Va. App. 9, 14-15, 454 S.E.2d 752, 754-55, aff'd en banc, 21 Va. App. 328, 464 S.E.2d 179 (1995).  The trial judge properly allowed the Commonwealth to introduce evidence of all the drugs as tending to prove an essential element of the crime.

For these reasons, we affirm the convictions.

Affirmed.