# CIRCUIT COURT OF THE CITY OF ROANOKE

Commonwealth of Virginia

v.

Demond Allen Ramey

April 11, 2000

Case No. CR99001659-00, 1659-01

BY JUDGE JONATHAN M. APGAR

On August 21, 1999, at approximately 2:09 p.m., Officer Vineyard of the Roanoke City Police Department received a transmission from police dispatch alerting officers to look for a vehicle with a white female driver and a black male passenger. In addition to a description of the occupants, the message contained a description of the car, its license plate, and the last known geographic location of the vehicle.

The dispatch warned that the vehicle contained a black male "involved" in a fatal shooting that had occurred approximately fourteen hours earlier that day. Before hearing the dispatch, Officer Vineyard already knew about the fatal shooting as well as a retaliatory shooting that happened in the intervening hours. Officer Vineyard knew that an individual named Timothy Buford and a juvenile were the two suspects in the fatal shooting. However, Officer Vineyard did not know whether the shooting involved a third party or a getaway driver.

Immediately after hearing the police broadcast, Officer Vineyard spotted a vehicle matching the described vehicle, both in color and occupants, traveling in the right geographic area. After the vehicle voluntarily stopped at a laundromat, Officer Vineyard pulled in behind the vehicle and called for two other officers to assist in an investigatory stop. Two other officers arrived, each in their own vehicle, also blocking in the suspected vehicle.

During the investigative stop, Officer Vineyard approached the vehicle and asked the passenger, the Defendant, for identification. Upon viewing the apparently valid license, Officer Vineyard concluded that the passenger was neither Timothy Buford nor a juvenile. However, Officer Vineyard did not have enough information to conclude that the car was not involved in the shooting.

Officer Vineyard detained the Defendant for less than ten minutes in all. Pursuant to standard police department procedure, Officer Vineyard kept the Defendant's license while he ran a computer check to discover any outstanding warrants against the Defendant. The background check accounted for roughly five minutes of the ten-minute time frame during which the officers detained the Defendant.

After finding an outstanding warrant on the Defendant, Officer Vineyard asked the Defendant to exit the vehicle. At that time, the Defendant grew "wild," resisted, wedged himself into the car, reached toward his back, and threw a bag between the front two seats. The Defendant's behavior was such that the officers feared for their safety. When the officers removed the Defendant from the vehicle, Officer Vineyard observed the weapon and contraband that brought the charges pending before the Court.

The Defendant bases his motion to exclude the weapon and contraband evidence on two claims. First, the Defendant claims that the officers lacked reasonable suspicion to conduct the initial investigatory stop because of the vague language given by the dispatch. In the alternative, the Defendant argues that the dispatch call itself lacked credibility, and therefore, the detention was unlawful. Second, the Defendant claims that once the officers determined that the Defendant was neither of the two suspects, Ramey's continued detention was unlawful.

The undisputed facts establish that the police subjected Ramey to an investigatory stop. The stop of a vehicle and detention of the driver constitutes a seizure within the meaning of the Fourth Amendment, even though the stop is limited and the detention brief. *See, Deer v. Commonwealth,* 17 Va. App. 730, 732 (1994) (citing *Castaneda v. Commonwealth,* 7 Va. App. 574, 579 (1989) (en banc)). Two issues arise in the case at bar. They are whether the police had reasonable suspicion to conduct the investigatory stop, and whether the stop, and subsequent detention, violated Ramey's right protected by the Fourth Amendment to the United States Constitution to be free from an unreasonable seizure.

The Fourth Amendment provides that "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated," U. S. Const., Amend. IV. The

Fourth Amendment does not, however, require a police officer to "simply shrug his shoulders and allow a crime to occur or a criminal to escape. A brief stop of a suspicious individual in order to determine his identity *or to maintain the status quo momentarily while obtaining more information,* may be most reasonable in light of the facts known to the officer at the time." *See Beckner v. Commonwealth,* 15 Va. App. 533, 537-38 (1993) (emphasis added) (citing *Adams v. Williams,* 407 U.S. 143, 145-46 (1972)).

## I. *Reasonable Suspicion for Investigatory Stop*

Although Ramey argues that the officers lacked reasonable suspicion to conduct the investigatory stop, Ramey admits that based on the description of the vehicle and passengers, Officer Vineyard had a sufficient basis to reasonably conclude that the vehicle he observed matched the described vehicle. Ramey argues that even after matching the vehicle, Officer Vineyard lacked sufficient basis to stop the car for two reasons. First, Ramey argues that the dispatch description of "somehow involved in the shooting" is too vague to be the basis of reasonable suspicion. Second, as the officers did not know the source of the information given by dispatch, the officers should not have relied on the dispatch as credible information.

### A. *Dispatch Language*

Ramey argues that the language given by dispatch, that the vehicle or its occupants may have been "somehow involved in the shooting," is too vague for the police to rely upon in forming their reasonable suspicion to conduct an investigatory stop. However, the Defendant admits that the officer had enough information to determine that the observed vehicle could match the vehicle described by dispatch. A police officer may stop and question a person, provided the officer has reasonable, articulable suspicion to believe the person may be involved in criminal activity. *See Terry v. Ohio,* 392 U.S. 1, 30 (1968). The *Terry* rule applies to investigatory stops of automobiles. *See Pleasants v. Commonwealth,* No. 1321-98-2, 1999 WL 1133711, at *2 (Va. App. Oct. 26, 1999).

Reasonable suspicion, while requiring less of a showing than probable cause, requires at least an objective justification for making the stop. *See United States v. Sokolow,* 490 U.S. 1, 7 (1989). In using the objective standard, the Court must ask whether the facts, available to the officer at the moment of the seizure or the search, would "warrant a man of reasonable caution in the belief" in the appropriateness of the action taken. *See Deer* at

734. In determining whether a police officer had a particularized and objective basis for an investigatory stop, the Court must consider the totality of the circumstances. *See United States v. Cortez*, 449 U.S. 411, 417-18 (1981).

In the case at bar, Officer Vineyard received information over a police dispatch describing the vehicle and its occupants and having a possible connection to a homicide. The car containing Ramey appeared to match the description. The information described a white female driver, a black male passenger, a General Motors' vehicle with extra letters in license plate and included the color of the vehicle. Dispatch's detailed description gave Officer Vineyard reasonable suspicion that the vehicle he spotted matched the vehicle possibly connected to the homicide. He knew the two main suspects had not been apprehended.

In *Jacques v. Commonwealth*, 12 Va. App. 591, 592 (1991), an officer received information over a police broadcast to look out for a vehicle, containing two black males, "in reference to a possible drug transaction and abduction." The court in *Jacques* held the language, although arguably vague, was sufficient to establish a reasonable basis for a *Terry* stop. *See id.* at 594. As one of the two crimes involved a possible danger to a person, the court ruled that the facts supported a reasonable suspicion, justifying the investigative stop. *See id.* The "somehow involved in the shooting" language, in Ramey's case, is no more vague than the language, "in reference to a possible ... abduction," upheld in *Jacques*. Therefore, with the language given by dispatch, the level of detail included, and the match with the vehicle observed, Officer Vineyard had sufficient reasonable suspicion to stop the vehicle occupied by Ramey.

## B. *Source of Dispatch Information*

In the alternative, Ramey claims that the dispatch call lacked credibility and, therefore, did not provide a sufficient basis to *detain* the Defendant. Assuming the Defendant meant that the dispatch call lacked credibility to *stop* the Defendant in the first instance, the Court will address the argument regarding the source of information in relation to the initial *Terry* stop.

At the suppression hearing, Officer Vineyard testified that the call came from the police station, although he did not know the original source of the information. The Defendant claims that because Officer Vineyard did not know the source of the information, Officer Vineyard acted unreasonably in relying on that information.

In *Florida v. J.L.*, No. 98-1993, 2000 WL 309131, at *2 (U.S. March 28, 2000), the Supreme Court held that an anonymous tip, *without more*, is not

sufficient to justify a *Terry* stop. This Court does not know the source of information in Ramey's case. However, assuming *arguendo*, that dispatch received an anonymous tip, Ramey's case does not fall within the reach of the *J.L.* holding. The Supreme Court held that an anonymous tip, without more information, is insufficient. In Ramey's case, we have "more" information. The source gave information relating to the shooting, the location of the vehicle, and a description of its vehicle and its occupants. Those details, coupled with the close proximity in which the vehicle was spotted, both temporally and proximately, gave the police sufficient corroboration of the information to overcome any *J.L.* concerns.

Further, a line of cases exists where courts found reasonable suspicion for an investigatory stop when the public was in imminent danger, despite the fact that the informant had not established any basis of knowledge. *See Beckner* at 538 (citation omitted). Officer Vineyard knew that a homicide occurred the prior night and that retaliatory activities were occurring throughout that day. Believing the vehicle and its occupants had some relation to the shootings, Officer Vineyard reasonably concluded that the Defendant could pose an imminent danger to society. "[I]t is frequently argued that in dealing with the rapidly unfolding and often dangerous situations on city streets, the police are in need of an escalating set of flexible responses, graduated in relation to the amount of information they possess." *Terry* at 10. Based on the information he received and regardless of the source of the call, Officer Vineyard reacted reasonably and lawfully to an escalating situation when he stopped behind the vehicle occupied by Ramey.

## II. *Detention After Initial Terry Stop*

### A. *Detention Generally*

Next, Ramey claims that even if the officers had reasonable suspicion to stop the vehicle, that once they determined that Ramey was neither of the two suspects, his continued detention was unlawful. The Defendant contends that the only reasonable and articulable suspicion possessed by the officers was based upon a search for Timothy Buford or a juvenile. Ramey reasons that as soon as Officer Vineyard realized that Ramey was neither of those two, the officer should have abandoned the stop.

The Defendant cites *Deer*, at 736, for the proposition that once the reason for the initial stop has been satisfied, the suspect must be freed, absent probable cause of another crime. The Defendant also cites *Thompson v. Commonwealth*, 16 Va. App. 478, 481 (1993), for the similar idea that once

the officer realized that the stopped person did not match the sought-after person, the justification for detention evaporated. Recently, the Court of Appeals of Virginia held that continued detention requires articulable suspicion of criminal activity. *See Fogg v. Commonwealth*, 31 Va. App. 722 (2000).

However, *Deer, Thompson,* and *Fogg* all differ from the case at bar. Officer Vineyard approached the Defendant because of his possible involvement in a fatal shooting and reasonable suspicion had not completely dissipated. The officers detained the Defendant because he fit the description given by dispatch, not because they believed he was Timothy Buford or a juvenile. In trying to determine Ramey's involvement in a serious crime, the police lawfully obtained cursory information and then proceeded to run a warrant check. After obtaining the Defendant's name, reasonable suspicion to detain him dissipated but did not disappear.

As the Defendant concedes, the "somehow involved in a shooting" language is vague and it could arguably refer to a third shooter, getaway driver, or a retaliatory shooter. By looking at the totality of the circumstances, including the fatal shooting, the retaliatory shootings, and the dispatch call, reasonable suspicion of the Defendant's involvement did not completely dissipate at the time the officers obtained his license.

## B. *Detention Specifically to Run a Warrant Check*

The Defendant argues that reasonable suspicion dissipated and that running a warrant check without reasonable suspicion violated Ramey's constitutional rights. Even if reasonable suspicion did dissipate somewhat because Ramey was neither Buford nor a juvenile, reasonable concern still existed that Ramey was somehow involved in the shootings. After determining that reasonable suspicion did not disappear, this Court holds that the brief warrant check did not violate Ramey's constitutional rights.

In *Fogg* itself, the officers ran a warrant check after determining that the stopped suspect did not match the person they sought. The Court did not challenge the validity or appropriateness of the warrant check. Similarly, in the case at bar, officers did not need new information in order to run the warrant check.

This Court will follow the ruling of *Jacques*, where the court held that a twenty-minute detention, after a *Terry* stop, was reasonable to allow a drug dog to search a vehicle, even when the officers knew the occupants of the vehicle did not match the description given by the dispatcher. In the case at bar, a ten-minute detention, following a report of shootings, was reasonable

to allow officers to obtain information about the Defendant and verify that he gave correct information to the officers.

The Defendant correctly argues that *Jacques* differs from the case at bar because the drug search in *Jacques* related to the original call, and the warrant check in the Defendant's case did not relate to the original call. However, because of the nature of the police broadcast, the severity of the alleged crimes, the match in description between the vehicle and the occupants, and the brief detention of less than ten minutes, Officer Vineyard reasonably ran a warrant check pursuant to standard police operating procedure.

"We cannot blind ourselves to the need for law enforcement officers to protect themselves and other prospective victims in situations where they may lack probable cause for an arrest." *Terry* at 24. The applicable standard is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. *Id.* at 27. A reasonable person would believe that a man suspected in a homicide posed a risk to safety. As running a warrant check is standard operating procedure and the occupant potentially had a connection to a homicide, the police reasonably detained the Defendant to run a warrant check.

According to the court in *Terry*, the officers could have frisked the Defendant during the investigative stop if they suspected he might be armed. *Id.* at 10. Based on the nature of the dispatch alert, warning of a homicide suspect, police could reasonably have suspected that Ramey was armed and, therefore, could legally have frisked him. Further, the officers could have requested that Ramey exit the vehicle during the investigatory stop. *See Pleasants* at *2 (citing *Hatcher v. Commonwealth*, 14 Va. App. 487, 490-91 (1992)). Officer Vineyard and the other officers could lawfully have frisked the Defendant, could have asked him questions about the night before, and could have asked him to exit the car without the warrant. As they could have asked Ramey questions while simultaneously running the warrant check, this Court will not hold that merely running the warrant check constituted an unlawful detention. Further, the officers legally could have returned Ramey's license to him, let him leave, followed his vehicle while running the check, and arrested him a minute later and a block away.

In reviewing any *Terry* stop, the "critical threshold issue is the intrusiveness of the seizure." *See United States v. Place*, 462 U.S. 696, 722 (1983). Compared to removal from the vehicle and frisking, running the warrant check was the least intrusive and most reasonable action available to the officers at the time of the stop. Due to lawfully obtaining Ramey's information, coupled with his wild reaction when the police approached his car the second time, and the fact that officers could have arrested him a few

moments later, the momentary detention in this particular case does not rise to a constitutional violation.

## C. *Search Incident to Arrest*

After running the warrant check, officers discovered an outstanding warrant against Ramey. Based upon that warrant, officers arrested him and brought the charges pending before this Court. Neither party argues with the proposition that evidence obtained during a search incident to arrest is lawful. However, even if police discovered the evidence without the arrest warrant, the search would have been lawful. A "quick check" around the driver's seat for weapons might be permissible given a suspect's demeanor during an investigatory stop. *See Pleasants* at *4. Given Ramey's demeanor when police returned to the vehicle following the warrant check and Ramey's resistance to exiting the car, the officers could have checked for and found the evidence, even absent the arrest warrant.

## *Conclusion*

Based on the description given by dispatch and the officer's observations, Officer Vineyard had reasonable suspicion to park behind the vehicle containing the Defendant. Once he stopped the Defendant, Officer Vineyard acted reasonably in detaining the Defendant while running a warrant check. The police lawfully obtained the evidence discovered during the ensuing arrest and, therefore, the Defendant's motion to suppress the evidence is denied.