COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Frank and Beales
Argued by teleconference


COMMONWEALTH OF VIRGINIA

                                                MEMORANDUM OPINION* BY
v.       Record No. 2925-06-3            CHIEF JUDGE WALTER S. FELTON, JR.
                                                        APRIL 20, 2007
JAMES MATTHEW RAMSDELL


FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
J. Leyburn Mosby, Jr., Judge

Alice T. Armstrong, Assistant Attorney General II (Robert F.
McDonnell, Attorney General, on briefs), for appellant.

Thomas S. Leebrick (Thomas S. Leebrick, P.C., on brief), for
appellee.


Pursuant to Code § 19.2-398, the Commonwealth appeals the pre-trial judgment of the trial

court suppressing evidence obtained during the search of James Matthew Ramsdell's (Ramsdell)

car.  On appeal, the Commonwealth contends that the trial court was correct in finding that the

traffic stop for a minor infraction was valid, but erred in finding that Ramsdell did not freely and

voluntarily consent to the search of his car.  For the reasons that follow, we find that the initial

detention for the traffic stop was abandoned and the subsequent consent to search was the fruit of

the illegal seizure.  We therefore affirm the judgment of the trial court.

## I.  BACKGROUND

On appeal of an order granting a motion to suppress evidence, we view the evidence in

the light most favorable to the accused, the prevailing party below, granting to the evidence all

reasonable inferences fairly deducible therefrom.  Commonwealth v. Grimstead, 12 Va. App.

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

1066, 1067, 407 S.E.2d 47, 48 (1991). "[W]e are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them[,] and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261, (1997) (*en banc*) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)).

So viewed, the evidence established that around 10:00 p.m. on March 16, 2006, Vice and Narcotics Officers Taylor and Riley of the Lynchburg Police Department were on-duty driving an unmarked car when they observed Ramsdell and another person sitting in a running car in the parking lot of a local restaurant. A third person exited the restaurant and entered the backseat of Ramsdell's car, remaining there approximately fifteen seconds before returning to the restaurant.[1] Officer Taylor did not see what, if anything, occurred in the parked vehicle, nor did he hear anything that may have been said in the car. Based on this incident, Officer Taylor suspected Ramsdell of drug activity. The officers followed Ramsdell's car as it left the parking lot and turned onto an adjacent city street. When Ramsdell's car stopped at a traffic light, the officers noticed that the third brake light mounted in the rear window was inoperable. The officers then effected a traffic stop.

Officer Riley approached the driver's side of the car and obtained Ramsdell's driver's license while Officer Taylor approached the passenger's side of the car and obtained the passenger's license. Officer Taylor, the only witness at the suppression hearing, did not recall informing Ramsdell of the reason for the stop and could not say whether Officer Riley had informed Ramsdell. Officer Riley immediately handed Officer Taylor Ramsdell's driver's

---

[1] Officer Taylor testified that the area in which the officers observed the person enter and exit Ramsdell's car was an ordinary shopping center. While Officer Taylor had made drug arrests in that parking lot before, he stated that the area was not an open-air drug market, but an area where "law abiding citizens" regularly shopped and ate in restaurants.

license.  Officer Taylor then directed Ramsdell to get out of the car and escorted him to the rear of the vehicle.  He asked Ramsdell for consent to search the car, to which Ramsdell replied, "do I have to let you search[?]"  Officer Taylor testified

> I told him he didn't have to let me search at which time he continued to just stand in front of me and then he asked me a question, well, what's going to happen next.  I explained to him that I was going to call for a narcotics canine and run his vehicle and see if it detected narcotics.  He became very nervous at the time and began to shake just a little bit.

Officer Taylor also told Ramsdell that he was going to write a summons, though he had not then begun to do so.  Upon hearing Officer Taylor's response, Ramsdell told Officer Taylor "you can go ahead and search my car."  Officer Taylor asked Ramsdell if he was sure, and Ramsdell said "yes."

Officer Taylor searched the car and found various illegal drugs and drug paraphernalia.  Ramsdell was arrested for possession of the illegal drugs and transported to the police station, where he made incriminating statements related to the drugs found in the car.

At the pre-trial suppression hearing, the trial court determined that the incident the officers witnessed in the parking lot "could have been anything[,]" inferring that there was no reasonable articulable suspicion to support a stop from that incident, but that the officers had probable cause to stop Ramsdell because of the equipment violation.  The court then determined that Ramsdell's "consent was not voluntary when he was [not] told he was free to leave and he was going to have to stay there until they called the dogs.  That's a show of lawful authority and coerces his consent to search."  Accordingly, the trial court granted Ramsdell's motion to suppress the evidence found in the car, as well as the incriminating statements he made at the police station.  This appeal followed.

## II.  ANALYSIS

The Commonwealth argues that Ramsdell was permissibly detained for a traffic infraction and was not free to leave when he consented to the search because the traffic stop was still in progress.  On appeal, we apply a *de novo* standard of review in determining whether a person's detainment was an impermissible seizure under the Fourth Amendment.  McCain v. Commonwealth, 261 Va. 483, 489, 545 S.E.2d 541, 545 (2001).

The record before us demonstrates that the officers had probable cause to stop Ramsdell, whose inoperable brake light violated Code §§ 46.2-1010 and 46.2-1014.1.[2]  "[T]he law has become well established that during a routine traffic stop, an officer may request a driver's license and vehicle registration, run a computer check, and issue a citation."  United States v. Foreman, 369 F.3d 776, 781 (4th Cir. 2004).  "'When the driver has produced a valid license and proof that he is entitled to operate the car, he must be allowed to proceed on his way, without being subject to further delay by police for additional questioning.'"  United States v. Rusher, 966 F.2d 868, 876 (4th Cir. 1992) (quoting United States v. Guzman, 864 F.2d 1512, 1519 (10th Cir. 1988)).

> The duration and execution of a traffic stop is necessarily limited by the initial purpose of the stop . . . .  [A]ny investigation of the vehicle or its occupants beyond that required to complete the purpose of the traffic stop constitutes a separate seizure that must be supported by independent facts sufficient to justify the additional intrusion. . . . [A]n officer's observation of a traffic violation "does not confer the right to abandon or never begin to take action related to the traffic laws and, instead, to attempt to secure a waiver of Fourth Amendment rights . . . ."

---

[2] See Whren v. United States, 517 U.S. 806, 813 (1996) ("'[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify the action.'" (quoting Scott v. United States, 436 U.S. 128, 138 (1978))).

Caldwell v. State, 780 A.2d 1037, 1047-48 (Del. 2001) (quoting Charity v. State, 753 A.2d 556, 572 (Md. Ct. Spec. App. 2000)).  As the Maryland Court of Special Appeals noted in Charity, "the purpose of the justifying traffic stop may not be conveniently or cynically forgotten and not taken up again until after an intervening narcotics investigation has been completed or has run a substantial course."  753 A.2d at 565.  "This standard respects the State's interest in investigating suspicious conduct during a valid traffic stop, while restricting police officers' authority to employ marginally applicable traffic laws as a device to circumvent constitutional search and seizure requirements."  Caldwell, 780 A.2d at 1048.

Here, Officers Taylor and Riley obtained Ramsdell's driver's license, but took no further steps to complete the traffic stop.  The record reflects that the officers did not inform Ramsdell of the reason for the stop, failed to perform a computer check on Ramsdell's license, and failed to take any other action toward writing a summons for the traffic offense.[3]  Instead, the officers solely focused on their narcotics investigation by retaining Ramsdell's license, directing Ramsdell to exit the car, and then immediately asking him for consent to search the car.  "Even where the traffic stop is not formally terminated by the issuance of a citation or warning, 'the legitimating *raison d'etre* evaporates if its pursuit is unreasonably attenuated or allowed to lapse into a state of suspended animation.'"  Id. (quoting Charity, 753 A.2d at 565).  Thus, the evidence, viewed in the light most favorable to Ramsdell, shows that the execution of the traffic stop exceeded its initial purpose.  Accordingly, we conclude that the officers abandoned the initial purpose of the stop, the traffic infraction, and, without reasonable articulable suspicion, continued to unlawfully detain Ramsdell in an attempt to secure consent for an otherwise invalid search.

---

[3] Documents in the record suggest that a summons for the offense was later issued by the magistrate, though the record presented to us on appeal does not contain any verification of that representation.

The Commonwealth also argues that the trial court's suppression of the evidence was erroneous because Ramsdell voluntarily consented to the search of his car. We disagree. It is well settled that evidence obtained as a direct result of an unconstitutional search or seizure in violation of the Fourth Amendment is subject to exclusion if it was "come at by exploitation of the initial illegality[.]" Wong Sun v. United States, 371 U.S. 471, 488 (1963)); accord Commonwealth v. Ealy, 12 Va. App. 744, 754-55, 407 S.E.2d 681, 687-88 (1991). Having determined that Officers Taylor and Riley abandoned the lawful traffic stop in favor of exploiting Ramsdell's traffic infraction to advance their narcotics investigation, Ramsdell's consent, voluntary or otherwise, was a fruit of his illegal seizure. See Deer v. Commonwealth, 17 Va. App. 730, 736, 441 S.E.2d 33, 37 (1994).

For these reasons, we affirm the trial court's granting of Ramsdell's motion to suppress and remand for further proceedings consistent with this opinion if the Commonwealth be so advised.

Affirmed and remanded.