COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Humphreys and Powell
Argued at Richmond, Virginia


RUSSELL MORGAN GREEN, III

                                                    MEMORANDUM OPINION[*] BY
v.       Record No. 2036-07-2                       JUDGE ROBERT J. HUMPHREYS
                                                    DECEMBER 16, 2008

COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF POWHATAN COUNTY
                            Thomas V. Warren, Judge

            Randy B. Rowlett (Gordon, Dodson, Gordon & Rowlett, on brief),
            for appellant.

            Josephine F. Whalen, Assistant Attorney General II (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


        Russell Morgan Green, III ("Green") appeals his convictions for felony possession of

cocaine, in violation of Code § 18.2-250 and misdemeanor possession of marijuana, his second

offense, in violation of Code § 18.2-250.1.  On appeal, Green contends that the evidence seized

from his person and vehicle was inadmissible at trial because his consent was the product of a

"meritless claim of lawful authority," in violation of the Fourth Amendment.  We disagree and

affirm the decision of the trial court.[1]

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] We find that the trial court was correct, but for the wrong reason, and in such
circumstances, we will affirm the trial court's decision.  See Driscoll v. Commonwealth, 14
Va. App. 449, 417 S.E.2d 312 (1992).  "Rule 5A:18 does not require an appellee to raise an issue
at trial before it may be considered on appeal where the issue is not offered to support *reversal* of
a trial court ruling."  Id. at 451, 417 S.E.2d at 312 (emphasis in original).

"A claim under the Fourth Amendment 'presents a mixed question of fact and law that an appellate court reviews *de novo*.'" Middlebrooks v. Commonwealth, 52 Va. App. 469, 475, 664 S.E.2d 499, 502 (2008) (quoting Whitfield v. Commonwealth, 265 Va. 358, 361, 576 S.E.2d 463, 464 (2003)). However, "we are bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers." McGee v. Commonwealth, 25 Va. App. 193, 198, 487 S.E.2d 259, 261 (1997) (*en banc*) (quoting Ornelas v. United States, 517 U.S. 690, 699 (1996)). The burden is on the defendant to show that the denial of his suppression motion, when the evidence is considered in the light most favorable to the Commonwealth, was reversible error. McCain v. Commonwealth, 261 Va. 483, 489-90, 545 S.E.2d 541, 545 (2001) (citing Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)).

"The Fourth Amendment guarantees 'the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'" Whren v. United States, 517 U.S. 806, 809 (1996). Even a "[t]emporary detention of individuals during the stop of an automobile by the police," implicates the Fourth Amendment. Id. at 810. However, "the Fourth Amendment right . . . may be waived, orally or in writing, by voluntary consent to a warrantless search of a person, property or premises." Deer v. Commonwealth, 17 Va. App. 730, 734, 441 S.E.2d 33, 36 (1994) (citing Bumper v. North Carolina, 391 U.S. 543, 548 (1968)). "The question of whether a particular 'consent to a search was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances.'" Id. at 735, 441 S.E.2d at 36 (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973)).

Green contends that his "consent" was not voluntarily given, because it was the product of coercion in the form of a "meritless claim of lawful authority." Specifically, Green argues that when he refused to consent to the search of his vehicle, Deputy Whittaker "lacked any lawful basis for further detaining [Green]." Thus, Deputy Whittaker was prohibited from detaining Green until a drug dog unit arrived on scene. The trial court disagreed and concluded that Deputy Whittaker had reasonable suspicion to believe Green was engaged in criminal activity, based on the anonymous tip and the fact that Green was a known drug user. Consequently, the trial court found that Deputy Whittaker's detention of Green for the purposes of obtaining a drug dog was lawful and that Green's consent was not coerced.

However, in Florida v. J.L., 529 U.S. 266 (2000), the Supreme Court held that an anonymous tip must be "suitably corroborated" and "exhibit[] 'sufficient indicia of reliability to provide reasonable suspicion to make [an] investigatory stop.'" Id. at 270 (quoting Alabama v. White, 496 U.S. 325, 327 (1990)). In this case, Deputy Whittaker observed nothing to corroborate the anonymous tip, other than his knowledge that Green was a drug addict. Therefore, Deputy Whittaker did not have reasonable suspicion to believe Green was carrying drugs and could not detain Green on that basis alone. However, because Deputy Whittaker had a valid, independent basis for detaining Green, his lack of reasonable suspicion, as it pertains to the anonymous tip, does not end our analysis.

In Illinois v. Caballes, 543 U.S. 405, 407 (2005), the Supreme Court discussed the issue of whether the Fourth Amendment permits the use of a drug dog during a routine traffic stop. "Official conduct that does not 'compromise any legitimate interest in privacy' is not a search subject to the Fourth Amendment." Id. at 408 (quoting United States v. Jacobsen, 466 U.S. 109, 123 (1984)). Thus, "the use of a well-trained narcotics-detection dog . . . during a lawful traffic stop, generally does not implicate legitimate privacy interests." Id. at 409. However, the

Supreme Court warned that the lawful seizure of a driver for the purposes of issuing a ticket might become unlawful "if it is prolonged beyond the time reasonably required to complete that mission." Id. at 407.

This Court addressed that very situation in Deer. In Deer, a Virginia State Trooper stopped the defendant for speeding. 17 Va. App. at 732, 441 S.E.2d at 34. After issuing the defendant a citation for speeding, the trooper asked if he could search the defendant's vehicle. Id. Initially the defendant refused, but after the trooper told him that he would be detained for up to an hour while a K-9 unit was called, the defendant agreed to the search. Id. at 732, 441 S.E.2d at 35. The trooper proceeded to search the vehicle. When the trooper found a brown paper bag on the floor, the defendant withdrew his consent. Id. Again the trooper stated that the defendant would be detained until a K-9 unit arrived. Id. At that moment, the defendant grabbed the brown paper bag and fled. Id. Eventually the trooper captured the defendant and recovered the bag, which contained a sizeable amount of cocaine. Id.

This Court held that the trooper's search was unlawful because "the detention of [the defendant] and his vehicle *beyond the time necessary to issue a traffic citation* was not permitted under the Fourth Amendment." Id. at 736, 441 S.E.2d at 37 (emphasis added). Green argues, "the facts of the instant case are entirely analogous to those of Deer." We disagree.

We find the facts of this case to be markedly distinct from those of Deer. In Deer, the trooper had already issued the defendant a citation when he asked for permission to search his vehicle. Id. at 732, 441 S.E.2d at 35. This Court found that once the trooper issued the citation, he was without any authority to further detain the defendant. Id. at 736, 441 S.E.2d at 37. Therefore, when the trooper told the defendant that he "would detain the vehicle and call for a K-9 drug unit," he employed "coercion under the color of lawful authority" to obtain the defendant's consent. Id. However, in this case, Deputy Whittaker had not issued Green a

- 4 -

citation at the time of his consent. In fact, Deputy Whittaker had not yet received "the return" on Green's license plate number. In stark contrast to Deer, the investigation of Green's traffic offenses was still ongoing at the time Deputy Whittaker asked for his consent to search the vehicle.

In light of Caballes and Deer, Deputy Whittaker would have had the authority to run a drug dog around Green's car, so long as the traffic stop was valid and not prolonged "*beyond the time necessary to issue a citation*." Id. (emphasis added). At trial, Deputy Whittaker testified that he "was looking for reasons to stop [Green]." However, despite its pretextual nature, Deputy Whittaker's stop of Green was nonetheless valid. Green's trial counsel conceded as much. Regardless, the constitutional reasonableness of a traffic stop does not depend on the actual motivations of the officers, but whether they have "probable cause to believe that a traffic violation has occurred." Wren, 517 U.S. at 811. Clearly Deputy Whittaker had probable cause to believe that Green committed a traffic violation, since he witnessed at least three such violations. Green's license plate was partially obstructed and improperly displayed, in violation of Code § 46.2-716(B), he used an improper signal to change lanes, in violation of Code § 46.2-860, and when executing a turn, he cut across the oncoming lane of traffic, in violation of both Code §§ 46.2-802 and 46.2-846(A)(2). Therefore, Deputy Whittaker's stop of Green was valid, regardless of his underlying motivations.

Having found Deputy Whittaker's stop of Green to be valid, we must now determine whether the duration of that stop was "*beyond the time necessary to issue a traffic citation*," so as to implicate the Fourth Amendment. Deer, 17 Va. App. at 736, 441 S.E.2d at 37 (emphasis added). We hold that it was not. Deputy Whittaker had only detained Green for a few moments when he spontaneously and voluntarily produced incriminating evidence. The mere fact that Green's actions were the product of Deputy Whittaker's statement that, "I need to detain you for

- 5 -

a minute so I can get a drug dog here," does not render them coerced. Because Green produced the incriminating evidence immediately after Deputy Whitaker's statement, we need not determine whether any delay necessary to secure a drug dog would have prolonged Green's detention beyond the time necessary to issue a citation.

In conclusion, Green's consent was not the product of coercion, in violation of the Fourth Amendment, because he was validly stopped for a traffic offense and his detention was not unreasonably prolonged. Thus, the trial court did not err in denying Green's motion to suppress and we affirm his convictions.

<u>Affirmed.</u>