COURT OF APPEALS OF VIRGINIA


Present:  Judges Bray, Frank and Agee
Argued at Chesapeake, Virginia


LOLITA RENEE DAVIS
                                        OPINION BY
v.   Record No. 0020-01-1          JUDGE G. STEVEN AGEE
                                        FEBRUARY 5, 2002
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                    Joseph A. Leafe, Judge

          William P. Robinson, Jr. (Robinson, Neeley &
          Anderson, on brief), for appellant.

          Marla Graff Decker, Assistant Attorney
          General (Randolph A. Beales, Attorney
          General, on brief), for appellee.


     Lolita Renee Davis (Davis) entered a conditional plea of

guilty in the Circuit Court of Norfolk to possession of heroin

with intent to distribute, in violation of Code § 18.2-248,

reserving the right to appeal the trial judge's denial of her

motion to suppress under Code § 19.2-254.  On appeal, she

contends (1) the search was the result of an unlawful detention

and (2) the arresting officers lacked jurisdiction to seize her

and perform the search.  She avers any evidence gathered in the

illegal search must be suppressed, as well as her ensuing

confession.  For the reasons that follow, we reverse the trial

court's denial of the motion to suppress.

## I.  BACKGROUND

On November 19, 1997, Detective Chappell of the City of Portsmouth Police Department received information from an informant that "a black female would be arriving in the parking lot of the Wendy's [in the 400 block of North Military Highway in the City of Norfolk] at 8:00 p.m." to make a "drop off of heroin."  According to the informant, the woman, with a light brown complexion and braids, would be driving a four-door red and gray vehicle, with the license plates containing "1134." Detective Chappell and Portsmouth Detective Grover went to the location and at approximately 8:10 p.m., Davis, who matched the given description of the suspect, drove a red and gray, four-door vehicle into the Wendy's parking lot.  The last four numbers of the vehicle's license plate were 1134.

When Davis parked her car, the detectives pulled their unmarked police car behind the vehicle, parked and approached the vehicle, but did not activate the police car's emergency lights.  They wore plain clothes with their badges shown.  Each officer's weapon was visible in a holster but was not drawn.

Detective Grover approached the driver's side of Davis' vehicle, and Detective Chappell approached the passenger side. Detective Grover knocked on Davis' window, and Davis either rolled the window down or opened the car door to reply. Detective Grover explained to Davis that the officers had received "information that she was transporting narcotics in the

-

vehicle." The detective testified that he asked, in a conversational tone, if he could search Davis and her vehicle but did not inform her that she could refuse the request. Both officers testified Davis consented and stepped out of her vehicle.[1] According to Detective Chappell, Davis was "completely cooperative" and gave him permission to search her pocketbook.

Once Davis vacated the vehicle and the detectives began a cursory search of it, Davis was handcuffed until a female officer was able to perform a protective pat-down. Detective Chappell read Davis "her rights" even though he did not consider her in custody, because he believed they would find drugs in her vehicle. Davis said that she understood her rights. The detectives also asked Davis if it would be alright to move her vehicle to a nearby location, approximately 100 yards away. Davis consented to this request. The detectives took control of and moved the vehicle.

Once the vehicle was moved, and before a thorough search was performed, Detective Chappell removed the handcuffs from Davis. She waited in a nearby police vehicle while the detectives completed their search, which led to the discovery of heroin. The detectives then placed Davis under arrest and transported her to the City of Norfolk Police Department.

---

[1] Davis testified she did not consent to the search.

-

At the police station, Davis was presented with a consent form advising her of her right to remain silent. Davis reviewed and signed the form. She then waived her right to remain silent and gave a written statement that she was to deliver drugs to an unknown subject. For her service in that regard, she was to be paid $200.

## II.  THE DETENTION

Davis first argues that she was detained by the police officers in violation of the Fourth Amendment and, therefore, the trial court erred in finding that her encounter with the officers was consensual[2] and that any consent to the search was voluntarily given.

## A.  STANDARD OF REVIEW

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. This protection does not prohibit encounters between the police and citizens, but prescribes limitations on those encounters. Police officers are free to approach individuals and ask questions. "The purpose of

---

[2] The Commonwealth conceded before the trial court and on brief that its case is based only on a consensual encounter and search of Davis. The Commonwealth specifically conceded that the police officers lacked a reasonable articulable suspicion and probable cause to believe Davis was involved in criminal activity. Our consideration is thus limited to whether Davis consensually interacted with the police officers and voluntarily gave her consent for them to search her vehicle.

-

the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.'" United States v. Martinez-Fuerte, 428 U.S. 543, 554 (1976).

"A consensual encounter occurs when police officers approach persons in public places 'to ask them questions,' provided 'a reasonable person would understand that he or she could refuse to cooperate.'" Payne v. Commonwealth, 14 Va. App. 86, 88, 414 S.E.2d 869, 870 (1992) (quoting United States v. Wilson, 953 F.2d 116, 121 (4th Cir. 1991)). "Such encounters 'need not be predicated on any suspicion of the person's involvement in wrongdoing,' and remain consensual 'as long as the citizen voluntarily cooperates with the police.'" Id. (citations omitted). "Law enforcement officers do not violate the Fourth Amendment merely by approaching an individual on the street, identifying themselves and asking the individual questions." Buck v. Commonwealth, 20 Va. App. 298, 301-02, 456 S.E.2d 534, 535-36 (1995).

"A person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980). The determination of

-

seizure is objective and is judged by whether a reasonable person would have felt restrained.

"At a hearing on a defendant's motion to suppress, the Commonwealth has the burden of proving that a warrantless search or seizure did not violate the defendant's Fourth Amendment rights." Reel v. Commonwealth, 31 Va. App. 262, 265, 522 S.E.2d 881, 882 (2000). "It[, however,] is well established that, on appeal, appellant carries the burden to show, considering the evidence in the light most favorable to the Commonwealth, that the denial of a motion to suppress constitutes reversible error." Motley v. Commonwealth, 17 Va. App. 439, 440-41, 437 S.E.2d 232, 233 (1993).

"This Court is 'bound by the trial court's findings of historical fact unless "plainly wrong" or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers.'" Neal v. Commonwealth, 27 Va. App. 233, 237, 498 S.E.2d 422, 424 (1998) (citation omitted). However, whether a defendant is seized in violation of the Fourth Amendment is a question that is reviewed de novo on appeal. See Mendenhall, 446 U.S. at 551 n.5.

B.  ANALYSIS

The trial court determined that a reasonable person in Davis' situation would have felt free to refuse to cooperate and leave.  Yet, the evidence, viewed in the light most favorable to

-

the Commonwealth, reveals the police officers, who stood at both front doors of the vehicle at night, directly and specifically informed Davis they believed she was there to deliver heroin. The police officers, whose badges and guns were clearly visible, at no time informed Davis that she could leave or that she could refuse to cooperate.  The record reflects that Davis would have been unable to restart her car and back out of the parking space because the police officers were parked behind her.[3]

The Commonwealth cites McCain v. Commonwealth, 261 Va. 483, 545 S.E.2d 541 (2001), and Garrison v. Commonwealth, 36 Va. App. 298, 549 S.E.2d 634 (2001), as authority to demonstrate the encounter between Davis and the police was consensual.  Both cases are readily distinguishable from the case at bar.

In McCain, the Supreme Court of Virginia held an encounter to be consensual where the officer "had not restrained McCain's movement in any manner that would have constituted a seizure of his person."  261 Va. at 491, 545 S.E.2d at 546.  The officer simply approached McCain and requested non-specific identification "without any show of force or display of authority that would have led a reasonable person to believe that he was not free to leave the scene of the encounter."  Id. McCain's freedom of movement was evidenced by the fact that he walked thirty-five feet away from the officer, after stating

---

[3] The record does not reflect, however, whether she could have driven forward.

-

that he did not want to submit to a pat-down search.  Id.
Moreover, McCain is further distinguishable from this case
because the police did not tell McCain he was identified as a
suspect in any crime.

In Garrison, we held an encounter to be consensual where
the defendant, aware that he was being sought for questioning
regarding a theft, voluntarily approached the investigating
officers and interacted with them, even though the officers
repeatedly informed him that he was free to leave.  Those facts
are conspicuously absent from the case at bar.

The case before us is controlled by our decision in McGee
v. Commonwealth, 25 Va. App. 193, 487 S.E.2d 259 (1997).  In
McGee, we held the defendant had been seized for Fourth
Amendment purposes when three uniformed police officers, acting
on an anonymous tip, "approached the defendant and 'stated to
him that [they] had received a call that he was on this corner
selling drugs and that he matched the description' of the
individual."  Id. at 196, 487 S.E.2d at 260.  The defendant was
also never informed he could leave the officers' presence.  We
held:

> [W]hen a police officer confronts a person
> and informs the individual that he or she
> has been specifically identified as a
> suspect in a particular crime which the
> officer is investigating, that fact is
> significant among the "totality of
> circumstances to determine whether a
> reasonable person would feel free to leave."
> When confronted with an accusation from

-

> police, such as, "we know you are selling
> drugs from this location, let us search
> you," no reasonable person would feel free
> to leave.

Id. at 200, 487 S.E.2d at 262 (emphasis added).[4]

McGee firmly establishes the proposition, in a Fourth

Amendment context, that where the police direct a specific

allegation of criminal wrongdoing to the suspect, that factor is

highly significant among the totality of factors in determining

whether an encounter between a citizen and police is consensual.

While an allegation of criminal wrongdoing does not

automatically negate a finding of a consensual encounter, a

court must review with particular scrutiny the voluntary status

of an encounter which is preceded by a specific allegation of

the suspect's criminal wrongdoing.

---

[4] Our holding in McGee that a seizure occurred was not
solely based on the statement to the defendant that he was
suspected of presently dealing drugs, but on the totality of the
circumstances, which included the fact that the three uniformed
police officers, who suddenly approached the defendant,

> did not by their words or actions suggest
> that the defendant was free to leave.  The
> unmistakable message conveyed to the
> defendant was that the officers had reason
> to suspect that he was [presently] selling
> drugs and that they were detaining him to
> investigate his [current] activity.  A
> reasonable person would have believed . . .
> that he or she was being detained and was
> required to [submit to the officers].

Id. at 201, 487 S.E.2d at 263.

-

Guided by our holding in McGee, the totality of the circumstances in this case reflects the encounter between the police officers and Davis was not consensual. As in McGee, it is highly significant among the totality of the circumstances that the police immediately and directly told Davis she was the suspect in the particular crime of heroin possession at that very place and moment. Additionally, the officers surrounded Davis' vehicle at night and did not inform Davis of her right to leave or to refuse a search. Under these circumstances, no reasonable person would have believed he or she was free to leave and ignore the police officers' requests. Upon de novo review, we find the police seized Davis by their show of authority, and under the totality of the circumstances the encounter was not consensual. This seizure violated the Fourth Amendment because the Commonwealth conceded the police officers lacked a reasonable, articulable suspicion or probable cause to believe Davis was involved in criminal activity. Id.

### III. THE SEARCH

Our analysis, though, does not end with our conclusion that Davis was unlawfully detained because the taint associated with an unlawful detention may be removed by a sufficiently attenuated consent to search. At trial, the Commonwealth maintained the search that uncovered the heroin was performed with Davis' consent and bore the burden of proving by a preponderance of the evidence that the consent was voluntary.

-

See Camden v. Commonwealth, 17 Va. App. 725, 727, 441 S.E.2d 38, 39 (1994); see also Bumper v. North Carolina, 391 U.S. 543, 548 (1968). We review the trial court's findings of historical fact only for "clear error," but we review de novo the trial court's application of defined legal standards to the particular facts of a case. See Jefferson v. Commonwealth, 27 Va. App. 1, 10-11, 497 S.E.2d 474, 478-79 (1998).

"[S]earches made by the police pursuant to a valid consent do not implicate the Fourth Amendment." McNair v. Commonwealth, 31 Va. App. 76, 82, 521 S.E.2d 303, 306 (1999) (en banc) (citing Mincey v. Arizona, 437 U.S. 385, 390 (1978)). Consent to a search must be freely and voluntarily given. Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). "[T]he determination of consent to search is subjective." United States v. Wilson, 895 F.2d 168, 171 (4th Cir. 1990).

> Voluntariness is a question of fact to be
> determined from all the circumstances, and
> while the subject's knowledge of a right to
> refuse is a factor to be taken into account,
> the prosecution is not required to
> demonstrate such knowledge as a prerequisite
> to establishing a voluntary consent.

Schneckloth, 412 U.S. at 248-49; accord Limonja v. Commonwealth, 8 Va. App. 532, 540, 383 S.E.2d 476, 481 (1989) (en banc).

"When trying to establish that there was a voluntary consent after an illegal stop, the [Commonwealth] has a much heavier burden to carry than when the consent is given after a permissible stop." United States v. Ballard, 573 F.2d 913, 916

-

(5th Cir. 1978).  Even if the Commonwealth discharges its heavy burden to prove a voluntary consent, the Commonwealth then must establish that the consent was "sufficiently an act of free will to purge the primary taint" of the illegal detention.  Wong Sun v. United States, 371 U.S. 471, 486 (1963).  Although the trial court found that Davis' consent to search was given "freely and voluntarily," the principle is well established that "[t]he fact that the consent was voluntary . . . does not mean that it was sufficiently an act of free will to purge the primary [illegal] taint."  Walls v. Commonwealth, 2 Va. App. 639, 654, 347 S.E.2d 175, 178 (1986) (citations omitted).  If Davis' consent was obtained as a product of the illegal detention, it is invalid as a "fruit of the poisonous tree."  See Wood v. Commonwealth, 27 Va. App. 21, 30, 497 S.E.2d 484, 488 (1998); Commonwealth v. Ealy, 12 Va. App. 744, 757, 407 S.E.2d 681, 689 (1991) (evidence must be suppressed if it was "obtained pursuant to . . . [a] voluntary consent to search [that] was '"come at by exploitation of [the initial] illegality" rather than "by means sufficiently distinguishable to be purged of the primary taint"'" (citations omitted)).

In determining whether consent was "sufficiently attenuated from the [illegal detention] to purge its taint," we have "considered, in addition to the voluntariness of the consent, the temporal proximity and the presence of intervening circumstances between the [illegality] and the consent, [the

-

defendant's] awareness of a right to withhold consent, and the purpose and flagrancy of the police misconduct." Id. at 755, 407 S.E.2d at 688. Therefore, if Davis' consent, even if voluntarily given, was not sufficiently attenuated from the unlawful detention as to "purge the taint" of that event, the evidence must be suppressed. See Walls, 2 Va. App. at 655, 347 S.E.2d at 185.

While the trial court determined Davis' consent was voluntarily given, it did not consider whether the consent was tainted because it failed to recognize the unlawful detention.

We, however, find the evidence shows that the consent was given contemporaneous with or immediately after the illegal detention began. The police officers obtained Davis' consent to the search in the initial conversation. No intervening circumstances occurred to break the chain of events between the illegal detention and the consent to search. See id. at 654, 347 S.E.2d at 184. No credible evidence supports an argument that the consent, given contemporaneous with or immediately after the detention began, was purged of the taint of the unlawful detention, particularly where Davis was not informed of her right to refuse consent. The police misconduct in unlawfully detaining Davis was directly related to the ensuing event of her giving consent; therefore, the consent in this case is invalid. See id. at 655, 347 S.E.2d at 184.

-

Because the evidence proved that the consent was tainted by the illegal detention, the trial court erred in denying Davis' motion to suppress the heroin. "Consent to search obtained as the result of an illegal detention is 'not an independent source of the evidence, but rather [is] an exploitation of the unlawful [stop].'" McGee, 25 Va. App. at 204, 487 S.E.2d at 264 (citing Ealy, 12 Va. App. at 757, 407 S.E.2d at 689).

### IV.  THE SUBSEQUENT CONFESSION

On appeal, Davis also challenges the trial court's failure to suppress her confession, made at the Norfolk Police Department after her arrest. She contends the confession is inadmissible due to the preceding illegal search and seizure. We agree.

The discovery of the heroin was a direct result of the illegal search and seizure of Davis and was, therefore, inadmissible. The subsequent arrest of Davis, which was based directly on the illegally obtained evidence, was likewise illegal. Furthermore, Davis' statements to the police, confessing to the transportation of narcotics, following the arrest "flowed one from the other with no discernable break in the chain of causation"; thus, those statements were the proverbial fruit of the poisonous tree and were also inadmissible. Deer v. Commonwealth, 17 Va. App. 730, 737, 441 S.E.2d 33, 38 (1994); see also Whitaker v. Commonwealth, 37 Va. App. 21, 35, 553 S.E.2d 539, 546 (2001); Davis v. Commonwealth,

-

35 Va. App. 533, 543, 546 S.E.2d 252, 257 (2001). The trial court thus erred in failing to suppress Davis' confession.

Therefore, we reverse the conviction as the trial court erred in failing to grant the motion to suppress, and remand to the trial court for further proceedings if the Commonwealth be so advised.[5]

<u>Reversed and remanded.</u>

---

[5] Because we reverse for the foregoing reasons, we do not address Davis' assignment of error concerning the authority of the Portsmouth police officers to arrest in the City of Norfolk under the circumstances of this case.

-