COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Frank and Kelsey
Argued at Chesapeake, Virginia


RONALD WRIGHT

MEMORANDUM OPINION[*] BY
v.    Record No. 0224-02-1        JUDGE D. ARTHUR KELSEY
NOVEMBER 19, 2002
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Robert W. Curran, Judge

Charles E. Haden for appellant.

John H. McLees, Senior Assistant Attorney
General (Jerry W. Kilgore, Attorney General,
on brief), for appellee.


The appellant, Ronald Wright, claims the trial court erred

by not suppressing evidence found during a search incident to

his arrest.  The arrest, Wright argues, took place within the

curtilage of his home without the benefit of a search warrant.

Finding Wright's complaint meritless as a matter of law, we

affirm the trial court's denial of the suppression motion.

I.

On appeal from a denial of a suppression motion, we review

the evidence in the light most favorable to the Commonwealth,

giving it the benefit of any reasonable inferences.  Bass v.

---

[*] Pursuant to Code § 17.1-413(A), this opinion is not
designated for publication.

*Commonwealth*, 259 Va. 470, 475, 525 S.E.2d 921, 924 (2000); Sabo v. *Commonwealth*, 38 Va. App. 63, 69, 561 S.E.2d 761, 764 (2002).

On November 30, 2000, the police received a report that Ronald Wright stabbed his live-in girlfriend and assaulted her daughter. Police arrived at the scene of the attacks that evening but did not make any arrests because Wright had already left. The girlfriend and daughter went to a local hospital for treatment. Arrest warrants were issued charging Wright with malicious wounding, use of a knife in the commission of a stabbing, assault and battery, grand larceny auto, and driving without a license.

The following evening, Officer Perry A. Bartels of the Newport News Police Department visited Wright's neighborhood to continue the investigation. While questioning neighbors about the incident, Bartels noticed lights on in Wright's home. Knowing that Wright's girlfriend and her daughter ── two of the home's three occupants ── were not staying at the house at that time, Bartels suspected that Wright might have returned to the home. Bartels approached Wright's house, positioned himself in the yard where he could view the front and side doors, called for backup, and drew his weapon.

A few minutes later, the lights in the house turned off and Wright emerged from the side door. Pointing his gun at Wright, Bartels identified himself as a police officer and ordered Wright to drop a bag he was carrying and place his hands in the

-

air.  Wright cooperated.  Bartels held Wright at gunpoint until the other officers arrived and then placed him under arrest. After handcuffing Wright, Bartels turned his attention to the bag that Wright had been carrying.  Intending to search the bag, Bartels asked Wright whether the bag contained anything that would concern him.  Without further prompting, Wright responded, "Yeah, there's a gun in the bag."  Bartels then reached into the bag and discovered a loaded, semi-automatic handgun.

A grand jury returned an indictment charging Wright, a convicted felon, with illegal possession of a firearm.  Shortly before trial, Wright filed a motion to suppress all evidence obtained by Bartels, claiming that his entry onto Wright's private property invalidated the arrest.  In his opening remarks to the trial judge, Wright's trial counsel conceded:  "There were I guess warrants out for malicious wounding, assault and battery, things of that nature which is why he was arrested." The trial court heard testimony from Officer Bartels, who confirmed that he had arrest warrants charging Wright with these offenses, but did not have any search warrants.

In his closing argument, Wright's counsel argued that the absence of a "search warrant" rendered illegal Bartel's entry onto Wright's property.  The prosecutor disagreed, pointing out that the "arrest warrant" entitled Bartels to arrest Wright "wherever he decided to secrete himself."  In reply, Wright's counsel again insisted that Bartels "did not have a search

warrant to enter the dwelling area.  Based on that, Your Honor, we would submit it."  The trial judge overruled the motion, holding that the "arrest warrant . . . takes care of it."  A jury later found Wright guilty of possession of a firearm by a felon, resulting in the imposition of a five-year prison sentence.  The trial judge appointed an attorney, who was not Wright's trial counsel, to handle Wright's appeal.[1]

---

[1] Appellant's opening brief did not mention the existence of the outstanding arrest warrants or that the trial judge specifically denied the suppression motion because of these warrants.  During oral argument before this Court, Wright's appellate counsel suggested the omission was inadvertent and that he did not become aware of these facts until reading the Commonwealth's brief of appellee.  Before Wright's counsel ever saw the Commonwealth's brief of appellee, however, he received and presumably reviewed:

    (i)     the trial transcript included in the joint appendix, which clearly mentioned these facts;

    (ii)    the Commonwealth's brief in opposition to the petition for appeal, which repeatedly mentioned these facts and argued that they were dispositive of this appeal; and

    (iii)   this Court's order of May 7, 2002, granting in part and denying in part the petition for appeal, which likewise made clear that "Bartels arrested appellant pursuant to arrest warrants for malicious wounding, use of a knife in the commission of a stabbing, grand larceny, assault and battery, and driving without a license."

Rule 5A:20(d) requires an appellant to provide a "clear and concise statement of the facts that relate to the questions presented" by the appeal.  The ethical duty of candor, implicit in Rule 5A:20(d), requires the disclosure of any obviously material fact — particularly one identified by the trial judge as the basis for his ruling being challenged on appeal.

-

II.

Though the ultimate question whether the officers violated the Fourth Amendment triggers de novo scrutiny on appeal, the trial court's findings of "historical fact" bind us due to the weight we give "to the inferences drawn from those facts by resident judges and local law enforcement officers." Davis v. Commonwealth, 37 Va. App. 421, 429, 559 S.E.2d 374, 378 (2002) (citing Neal v. Commonwealth, 27 Va. App. 233, 237, 498 S.E.2d 422, 424 (1998)). We examine the trial court's factual findings only to determine if they are plainly wrong or devoid of supporting evidence. See Mier v. Commonwealth, 12 Va. App. 827, 828, 407 S.E.2d 342, 343 (1991). If reasonable jurists could disagree about the probative force of the facts, we have no authority to substitute our views for those of the trial judge.

In addition, the appellant must shoulder the burden of showing that the trial court's decision "constituted reversible error." McGee v. Commonwealth, 25 Va. App. 193, 197, 487 S.E.2d 259, 261 (1997) (en banc) (citations omitted); see also Davis, 37 Va. App. at 429-30, 559 S.E.2d at 378. "Absent clear evidence to the contrary in the record, the judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts." Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977); Oliver v. Commonwealth, 35 Va. App. 286, 297, 544 S.E.2d 870, 875 (2001) ("The trial court's judgment is presumed to be correct."); Dunn

-

v. Commonwealth, 20 Va. App. 217, 219, 456 S.E.2d 135, 136 (1995).

                                III.

Wright argues that Officer Bartels needed a search warrant to justify his entry onto Wright's property to effect his arrest.  This contention fails as a matter of law.  It is true that, absent exigent circumstances or consent, the Fourth Amendment will invalidate any warrantless police entry into a suspect's home, whether the officer intends to conduct a search or to arrest someone within.  See Payton v. New York, 445 U.S. 573, 586 (1980); Robinson v. Commonwealth, 31 Va. App. 479, 484, 524 S.E.2d 171, 173 (2000); Jefferson v. Commonwealth, 27 Va. App. 1, 16, 497 S.E.2d 474, 481 (1998).  It is entirely untrue, however, that the warrant must be a search warrant.

An officer may lawfully enter a suspect's home if the officer has an arrest warrant for the suspect.  See Payton, 445 U.S. at 602-03.  "If there is sufficient evidence of a citizen's participation in a felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law."  Id. A properly issued arrest warrant, therefore, provides "limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."  Id.; see also Barnes v. Commonwealth, 234 Va. 130, 135, 360 S.E.2d 196, 200 (1987) (police can arrest suspect residing in another's

-

apartment without need for search warrant); Archer v. Commonwealth, 26 Va. App. 1, 9-10, 492 S.E.2d 826, 830-31 (1997); cf. Steagald v. United States, 451 U.S. 204, 219 (1981) (subject of an arrest warrant cannot complain of absence of search warrant when arrested in home of another, but residents of home not named in warrant have Fourth Amendment protection from search for anything other than subject of warrant). Once inside, however, the Fourth Amendment limits the scope of the officer's authority —— he can search only for the suspect and, upon finding him, perform the arrest and an incidental search. Archer, 26 Va. App. at 9-10, 492 S.E.2d at 830.

These principles apply to the curtilage of the home as well as to the home itself. The Fourth Amendment's prohibition against warrantless searches of one's home stretches beyond the walls of the house and embraces the home's curtilage. Jefferson, 27 Va. App. at 16, 497 S.E.2d at 481 (citing Oliver v. United States, 466 U.S. 170, 180 (1984)). Encompassing both land and structures, the curtilage comprises the area "immediately surrounding" the home, Oliver, 466 U.S. at 180, that is so "intimately linked" both "physically and psychologically" to the home as to be its functional equivalent. California v. Ciraolo, 476 U.S. 207, 213-14 (1986).

Upon making a lawful arrest, a police officer can conduct an incidental search of the suspect to gather weapons and search for contraband. United States v. Robinson, 414 U.S. 218, 224

-

(1973) ("It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment."); Commonwealth v. Brunson, 248 Va. 347, 357, 448 S.E.2d 393, 399 (1994); Clarke v. Commonwealth, 32 Va. App. 286, 296, 527 S.E.2d 484, 489 (2000).

For these reasons, the arrest warrants provided Officer Bartels with authority to arrest Wright within the curtilage of his residence.  To be sure, had Bartels decided to do so, he could have entered Wright's home and taken him into custody there.  Bartels had a reasonable basis to believe that Wright was present in the home and was the person who came out the side door.  Nothing in the record, moreover, suggests that Bartels exceeded the scope of his authority by searching Wright incident to his arrest.

## IV.

Settled Fourth Amendment principles govern this appeal and legitimate the legality of Wright's arrest.  Wright provides neither legal authority nor persuasive argument for invalidating his arrest because of the absence of a search warrant authorizing entry onto his property.  We thus affirm the trial court's denial of Wright's motion to suppress.

Affirmed.

-