COURT OF APPEALS OF VIRGINIA


Present:    Judges McClanahan, Haley and Petty
Argued by teleconference


COMMONWEALTH OF VIRGINIA

                                                      MEMORANDUM OPINION[*] BY
v.        Record No. 1123-08-3                  JUDGE JAMES W. HALEY, JR.
                                                          OCTOBER 14, 2008
JONATHAN RAY SWIFT


            FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                          J. Leyburn Mosby, Jr., Judge

            Craig W. Stallard, Assistant Attorney General (Robert F. McDonnell,
            Attorney General, on briefs), for appellant.

            Sidney H. Kirstein for appellee.


        The Commonwealth of Virginia ("appellant") appeals the trial court's decision to grant a

pretrial suppression motion filed by Jonathan Ray Swift ("Swift").  The trial court suppressed

evidence of alleged cocaine residue that police officers discovered after searching Swift during

the traffic stop of an automobile in which Swift was a passenger.  Finding that the trial court's

ruling was supported by the evidence and was not plainly wrong, we affirm.

                                            FACTS

        On August 12, 2007, Officer Clark of the Lynchburg Police Department stopped a white

pickup truck driven by Kevin Jamerson ("Jamerson").  Apart from Jamerson himself, Swift was

the only passenger in the truck.  Officer Clark stopped the truck because, after using his

computer to check the number of the license plate affixed to the truck, he discovered that the

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

license plate number was not on file with the Department of Motor Vehicles. Another policeman, Officer Blankenship, arrived in a separate police vehicle shortly after the stop.

Jamerson did not have a driver's license, and the computer in Clark's police cruiser indicated that Jamerson's license to drive was revoked. Clark wrote Jamerson a summons for improper registration and driving while his license was suspended. Clark also asked Jamerson to exit the truck, and he asked Jamerson whether he had anything illegal on his person. When Jamerson replied that he did not, Clark asked Jamerson if he could search him. Jamerson said that he could. During his search of Jamerson, Clark found a small plastic bag of marijuana in Jamerson's pocket.

Leaving Jamerson with Officer Blankenship, Clark asked Swift to step out of the truck. After Swift had done so, Clark asked Swift for permission to search him. There was conflicting evidence on the question of whether Swift actually gave permission. Clark testified that Swift gave him verbal permission to search. Swift testified that he made no reply to Clark's request for permission to search, that he merely placed his hands on the side of the police cruiser, and that Clark searched him. Swift also testified that he did not feel free to decline Clark's request. Jamerson, who was on the driver's side of the police cruiser with Officer Blankenship at the time Clark searched Swift, testified that he could hear what Clark and Swift were saying to each other and that he did not hear Swift consent to Clark's request for permission to search Swift. The only other piece of evidence on the question of consent was a video/audio tape of the traffic stop recorded by a video camera in Clark's police cruiser. At the hearing, the trial court found that, while listening to the tape, he could not hear Swift's consent to the search. During his testimony, Officer Clark conceded that he had no reason to suspect Swift of criminal activity before he searched Swift.

During the search, Clark found a plastic spoon in Swift's pocket. The Commonwealth later indicted Swift for possessing cocaine in violation of Code § 18.2-250, asserting that the substance found on the plastic spoon was cocaine residue.

Swift filed a pretrial motion to suppress the alleged cocaine residue. He argued that the police found the substance in violation of his constitutional right to be free from unreasonable searches and seizures under the Fourth Amendment.

> The facts of this case are that on August the 12th '07, the pickup truck that Mr. Swift was a passenger in was stopped for a traffic offense, license plate lights. I think it was in that apartment complex off Old Forest Road, if I remember correctly. And it started about 2:46, I think: 2:26. Initial stop was 2:26. And then Jamerson, the driver, was searched at 2:49. 2:51 the police officer approached the passenger side of the vehicle. At that point they concluded dealing with Jamerson.
> In the disputed issue of whether or not there was consent, I agree and I think both counsel agree you can't hear it on the video tape that was going on. The police officer said he asked for consent, he wants and received consent to search the defendant, Mr. Swift. But you can't hear that on the video tape. Mister Swift said he did not consent to the search. Mister Swift's witness, Mr. Jamerson, said he did not hear consent. Next thing that happens on the video, Mr. Swift is placed on the hood of the police cruiser and is patted down. A spoon is removed from his back pocket.
> So those are the facts that occurred.

Relying on Harris v. Commonwealth, 266 Va. 28, 581 S.E.2d 206 (2003), and Deer v. Commonwealth, 17 Va. App. 730, 441 S.E.2d 33 (1994), Swift argued that he was illegally detained when Officer Clark began questioning him about whether there were drugs on his person. Swift also argued that he did not consent to Officer Clark's request to search him. Before announcing his ruling, the trial court made a series of remarks from the bench, including statements suggesting that he agreed that Swift had been illegally detained when Officer Clark began asking him questions about drugs. However, he also stated: "So when I consider all the circumstances in this case, and the case law, I'm going to grant the motion to suppress for the reasons the court stated in its oral presentation today, and in your memorandums, Mr. Kirstein."

The defense counsel's memorandum in support of Swift's motion to suppress included his argument that he did not consent to Officer Clark's search of his person.

ANALYSIS

Whether evidence was seized in violation of the Fourth Amendment is a mixed question of law and fact that an appellate court reviews *de novo*. See Ornelas v. United States, 517 U.S. 690, 691 (1996); Murphy v. Commonwealth 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002). "Our duty of exercising *de novo* judgment, however, plays no role in determining the contested facts of a case. Those are for the litigants to develop and the factfinder to decide. We review *de novo* only the 'ultimate question' whether the officer violated the Fourth Amendment." Logan v. Commonwealth, 47 Va. App. 168, 172, 622 S.E.2d 771, 773 (2005) (citing Kyer v. Commonwealth, 45 Va. App. 473, 479, 612 S.E.2d 213, 216-17 (2005)). We view the facts in the light most favorable to the party prevailing below, in this case Swift, and resolve all evidentiary conflicts in his favor. An appellate court will affirm the judgment of the trial court unless it is plainly wrong or without evidence to support it. Commonwealth v. Jackson, 276 Va. 184, 195, 661 S.E.2d 810, 815 (2008).

Police may make a traffic stop when they have reasonable suspicion to believe a traffic or equipment violation has occurred. Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 923-24 (2000). The parties in this case do not dispute that Officer Clark's discovery that the license plate on Jamerson's truck was not registered to that truck gave Clark a valid reason to stop the truck.

After a police officer has lawfully stopped a motor vehicle, the officer may, as a matter of course, order the driver to exit the vehicle. Pennsylvania v. Mimms, 434 U.S. 106, 111 (1977). The United States Supreme Court later extended the Mimms rule to apply to the passengers of a lawfully stopped motor vehicle. Maryland v. Wilson, 519 U.S. 408, 410 (1997). Because

Officer Clark lawfully stopped Jamerson's truck, he did not violate the Fourth Amendment by ordering Jamerson and Swift out of the truck. However, the Fourth Amendment prohibits a search of the person for investigative purposes without a showing of probable cause that the person is engaged in criminal activity. See Brown v. Commonwealth, 270 Va. 414, 418, 620 S.E.2d 760, 762 (2005). The Fourth Amendment prohibits even a limited search of a suspect's outer clothing on less than probable cause, except when the investigating officer makes a valid stop based on a reasonable, articulable suspicion of criminal activity, and the officer reasonably believes the suspect to be armed and dangerous. See Terry v. Ohio, 392 U.S. 1, 28-30 (1968).

"[T]he Fourth Amendment right to be free from unreasonable searches and seizures may be waived, orally or in writing, by voluntary consent to a warrantless search of a person, property or premises." Deer, 17 Va. App. at 734, 441 S.E.2d at 36 (citing Bumper v. North Carolina, 391 U.S. 543, 548 (1968)). The burden is on the Commonwealth to prove that consent to search was freely and voluntarily given. Hairston v. Commonwealth, 216 Va. 387, 388, 219 S.E.2d 668, 669 (1975); see also Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). "Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." Davis v. Commonwealth, 37 Va. App. 421, 433, 559 S.E.2d 374, 379-80 (2002).

It is undisputed that Officer Clark did not have probable cause or even a reasonable suspicion that Swift was involved in criminal activity at the time he began searching Swift. Indeed, he testified that he had no objective reason to suspect that Swift possessed drugs before the search. Thus, unless Swift voluntarily consented to the search, Swift's motion to suppress was properly granted. "Searches made by the police pursuant to a valid consent do not implicate

the Fourth Amendment." McNair v. Commonwealth, 31 Va. App. 76, 82, 521 S.E.2d 303, 306 (1999) (en banc) (citing Mincey v. Arizona, 437 U.S. 385, 390 (1978)).

However, voluntariness is a question of fact. Davis, 37 Va. App. at 433, 559 S.E.2d at 379-80. Our standard of review requires that we view the facts in the light most favorable to Swift because the trial judge, who heard the testimony of the witnesses, granted Swift's motion. See Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). In this case, there was conflicting evidence on the issue of consent, an issue that the Commonwealth had the burden of proving. The police officer said that Swift consented; Swift and Jamerson said that he did not; the trial court could not hear Swift consent while listening to the tape. Given this evidence, we cannot say as a matter of law that granting Swift's suppression motion was plainly wrong or without evidence to support it. See Commonwealth v. Holloway, 9 Va. App. 11, 20, 384 S.E.2d 99, 104 (1989) ("This conflict in the evidence must be resolved in the defendant's favor because he was the prevailing party in the motion to suppress which is before us in this appeal.").

The Commonwealth argues that a necessary implication of the trial court's ruling on the illegal detention issue is that the court believed the police officer's testimony on the consent issue. If not, the argument continues, it would have been unnecessary to decide that Clark illegally extended Swift's detention when he asked Swift about drugs. We disagree for three reasons. First, the argument cuts both ways. Swift could plausibly argue that, if the trial court believed the police officer's testimony on the issue of consent, the trial court would have denied his motion without reaching the illegal detention issue. Secondly, the issues are logically separate and distinct from each other. Even if the trial court was wrong about the illegal detention, a question about which we express no opinion, Officer Clark's search of Swift violated the Fourth Amendment unless the Commonwealth met its burden to show Swift's free

and voluntary consent to search. Finally, the Commonwealth cannot point to anything in the record suggesting that the trial court believed the police officer's testimony. Indeed, the trial court stated on the record that the conflict in the testimony "makes the consent even more suspicious." And the trial court twice remarked on the fact that he did not hear Swift consent to search on the videotape. We must view the facts in the light most favorable to Swift. When viewed in the light most favorable to Swift, the evidence adduced at the hearing on Swift's motion to suppress was sufficient to support a finding that he did not freely and voluntarily give consent to the search in this case.

## CONCLUSION

The judgment of the trial court is affirmed.

Affirmed.