# COURT OF APPEALS OF VIRGINIA

Present: Judges Chaney, Callins and Senior Judge Petty
Argued at Lexington, Virginia

JUSTICE AHMAD CARR

v.       Record No. 1136-21-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE VERNIDA R. CHANEY
OCTOBER 18, 2022

FROM THE CIRCUIT COURT OF THE CITY OF WAYNESBORO
Paul A. Dryer, Judge

Jennifer T. Stanton, Senior Assistant Public Defender (Indigent
Defense Commission, on briefs), for appellant.

Liam A. Curry, Assistant Attorney General (Jason S. Miyares,
Attorney General; Sharon M. Carr, Assistant Attorney General, on
brief), for appellee.

Justice Ahmad Carr ("Carr") entered conditional guilty pleas in the Circuit Court for the

City of Waynesboro ("circuit court"), and he now appeals the circuit court's denial of his motion to

suppress evidence.[1]  Carr contends that the circuit court erred in finding that the police had

reasonable, articulable suspicion to detain him and, therefore, erred in denying his motion to

___

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Pursuant to Code § 19.2-254, Carr's entry of conditional guilty pleas reserved his right to
appellate review of the circuit court's adverse determination of his suppression motion.  Based on
his conditional guilty pleas, Carr was convicted of armed burglary in violation of Code § 18.2-90,
robbery in violation of Code § 18.2-58, use of a firearm in commission of robbery in violation of
Code § 18.2-53.1, and unlawfully wearing a mask in violation of Code § 18.2-422.

suppress the fruits of his unconstitutional seizure.[2] For the following reasons, this Court agrees with

Carr and reverses the circuit court's judgment.[3]

## I. BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party" in the circuit court. *McGowan v.*

*Commonwealth*, 72 Va. App. 513, 516 (2020) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472

(2018)). This Court "regard[s] as true all credible evidence favorable to the Commonwealth and all

inferences that may reasonably be drawn from that evidence." *Id.* (citing *Gerald*, 295 Va. at 473).

On February 17, 2020, late in the evening, Deputy Sheriff Stroop of Augusta County

responded to a radio call regarding a robbery in Waynesboro. When Deputy Stroop drove by the

crime scene in Waynesboro, an officer on the roadway told him "there [were] people inside the

house that weren't supposed to be there, a firearm was taken, and then they fled on foot."

Subsequently, as Deputy Stroop was driving around, he heard on the police radio a

be-on-the-lookout ("BOLO") that described the robbery suspects.

At the suppression hearing in March 2021, Deputy Stroop testified that he did not recall the

description of suspects that he heard in the BOLO. Sergeant Lemons, the Waynesboro officer who

announced the BOLO on the radio, tried to remind Deputy Stroop of the BOLO's contents on the

day of the suppression hearing. However, in response to questioning by the circuit court, Deputy

---

[2] Carr's co-defendant, Arun Rashid Turay ("Turay"), filed a separate appeal to this Court challenging the denial of his motion to suppress, which was heard in the circuit court in a joint evidentiary hearing with Carr's suppression motion. *See Turay v. Commonwealth*, No. 0868-21-3 (Va. Ct. App. Oct. 18, 2022).

[3] Judge Chaney dissented in *Turay* on the grounds that the circuit court erred in denying Turay's suppression motion based on an erroneous determination that the police had reasonable, articulable suspicion to detain Turay. For the same reasons that this Court herein reverses the circuit court's judgment denying Carr's motion to suppress, Judge Chaney would also reverse the circuit court's judgment denying Turay's suppression motion.

Stroop testified that he still did not recall the BOLO description of the suspects that he had heard on the radio.

According to Sergeant Lemons, he only "had a very general description" when he radioed the BOLO. Sergeant Lemons initially testified that the BOLO described "three Black males who were all armed, and that they were wearing black." On further examination, Sergeant Lemons twice clarified that when he first radioed patrol officers to be on the lookout for three armed Black males, he described the suspects as "wearing black sweatshirts." This description of the suspects was confirmed in the testimony of Officer Mawyer, a patrol officer who responded to the BOLO. Additionally, the Commonwealth's attorney conceded in closing argument that Sergeant Lemons' initial description was three "Black males wearing black sweatshirts." In the circuit court's colloquy with the Commonwealth's attorney, the circuit court also stated that "the initial description, the one that Sergeant Lemons testified to, was that it was three Black males with three black—wearing black sweatshirts."

Soon after Deputy Stroop heard Sergeant Lemons' BOLO, he stopped and detained two Black men who "were walking down the road." Deputy Stroop testified that he "remember[ed] saying to [him]self, 'hey; that matches the description that I heard over the radio.'" Deputy Stroop stopped the two men around 11:30 p.m., about thirty minutes after the robbery and approximately six to ten blocks from the scene of the robbery.

The two men seized by Deputy Stroop were Carr and his co-defendant, Arun Rashid Turay ("Turay"). Deputy Stroop testified that when he stopped Carr and Turay, there were not many people out on the street where Carr and Turay were walking. Deputy Stroop also testified that Carr and Turay were not doing anything but walking down the road in a residential neighborhood.

Deputy Stroop held Carr and Turay at gunpoint and directed them to place their hands on the hood of his police car. Moments later, after Deputy Stroop notified Waynesboro police,

Officers Cacciapaglia and Mawyer from Waynesboro arrived separately at Deputy Stroop's location to determine whether he had detained the right people.

Upon Officer Mawyer's arrival at the detention site, Sergeant Lemons provided a more detailed description of the suspects' clothing, including information obtained after the BOLO.[4] According to Sergeant Lemons' additional description of the suspects, all three wore hoodies. Two suspects were wearing black hoodies, and the third was wearing a black and white striped hoodie with "a leopard-print pajama-type bottom." Additionally, at least one of the suspects was wearing black pants with a red stripe. Officer Mawyer concluded that Turay matched a suspect's description because Turay "was wearing a black jacket with a distinct red stripe . . . down the sleeves."

The police bodycam video shows Carr wearing light gray pants, a long-sleeved white top with a multi-colored print and lettering on the front, a white or light-colored cap with a dark brim, turned backward, and a backpack with a floral design. Officer Mawyer testified that Carr was wearing gray pants and a white hoodie. The police bodycam video shows Turay wearing black pants and a long-sleeved black top with a wide red stripe down each sleeve and a wider blue stripe on each side of the garment.

After Sergeant Lemons supplemented the original BOLO's description of the suspects' clothing, the Waynesboro patrol officers handcuffed and searched Carr and Turay.[5] Neither Carr nor Turay possessed any weapons. But Carr possessed credit cards belonging to one of the victims, and Turay was carrying a bookbag that contained a victim's keys in addition to bloody clothes and shoes that looked the same as items seen on the video of the robbery. A DNA comparison showed that the blood on the clothes matched one of the victims.

---

[4] As the circuit court found, Sergeant Lemons repeated to Officer Mawyer a more detailed description of the suspects' clothing that he provided patrol officers after Deputy Stroop detained Carr and Turay.

[5] Officer Cacciapaglia testified that Carr gave him consent to search his pockets.

- 4 -

After Carr and Turay were seized and searched, Sergeant Lemons arrived at the detention site.[6] As Sergeant Lemons acknowledged in his testimony, he recorded in his police report that neither Carr's nor Turay's clothing matched the suspects' clothing description that he radioed in the original BOLO.[7]

Carr filed a suppression motion in the circuit court alleging that his detention by Deputy Stroop was an unconstitutional seizure because it was not supported by reasonable, articulable suspicion that Carr was involved in the robbery. Turay also filed a suppression motion alleging that he was unconstitutionally stopped and detained without reasonable, articulable suspicion. After a joint hearing on both defendants' suppression motions, the circuit court denied both motions for the reasons stated in its letter opinion dated March 24, 2021.

In the March 2021 letter opinion, the circuit court made the following findings:

- The first BOLO description radioed by Sergeant Lemons described the suspects as "three black males wearing black."

- Although Sergeant Lemons radioed more detailed descriptions of the suspects' clothing after the initial BOLO, "Deputy Stroop would have only heard the first description prior to detaining the Defendants."

- When Sergeant Lemons arrived at the location where Carr and Turay were detained, "he noticed that their clothing did not match precisely the descriptions that he previously gave over his police radio."

- "Carr's clothing was not black," but "Turay's clothing was black, matching the description heard by Deputy Stroop."

---

[6] Sergeant Lemons testified that after he arrested, Mirandized, and questioned Carr, Carr gave a full confession to his participation in the robbery.

[7] Sergeant Lemons' testimony:

> Q: Do you recall, in your report, that . . . You indicated in your report that at the time of arrival that the first thing you noticed was that neither of the males' clothing description matched what you had said over the radio?
>
> A: I do recall that; yes, ma'am.

- "Neither [Carr nor Turay] was wearing black sweatpants with a red stripe."

- "[T]he Defendants at the time [Deputy] Stroop encountered them, matched the description in sex, race, and some of the clothing."

- "[T]here were no other people out in the neighborhood during this time" when Deputy Stroop observed Carr and Turay walking down the street late in the evening.

- "[T]he Defendants were the only two people Deputy Stroop encountered walking in the residential neighborhood, at 11:30 p.m., a relative short distance from the crime scene within thirty minutes of the crime."

- Taken together, the factors of proximity, time, physical description, gender, and racial description "gave Deputy Stroop, an objective, reasonable suspicion that the Defendants may have been involved in the crime that occurred a few blocks away and a few minutes before his encounter with them."

- Deputy Stroop had reasonable, articulable suspicion to stop and detain Carr and Turay.

Based on these findings, the circuit court concluded that "the stop and detention of the Defendants by Deputy Stroop was not in violation of the Fourth Amendment." Accordingly, the circuit court denied both defendants' suppression motions. This appeal—and Turay's separate appeal—followed.

## II. ANALYSIS

### A. Standard of Review

On appeal of the denial of a motion to suppress evidence, this Court "determine[s] whether the accused has met his burden to show that the trial court's ruling, when the evidence is viewed in the light most favorable to the Commonwealth, was reversible error." *Merid v. Commonwealth*, 72 Va. App. 104, 108 (2020) (quoting *Cantrell v. Commonwealth*, 65 Va. App. 53, 56 (2015)), *aff'd*, 300 Va. 77 (2021), *cert. denied sub nom. Merid v. Virginia*, 142 S. Ct. 1137 (2022). Carr's "claim that [he] was seized in violation of the Fourth Amendment presents a mixed question of law and fact . . . ." *Id.* at 108-09 (quoting *King v. Commonwealth*, 49 Va. App. 717, 721 (2007)). This Court is "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the

inferences drawn from those facts by resident judges and local law enforcement officers." *Id.* at 109 (quoting *Cantrell*, 65 Va. App. at 56). "However, we consider *de novo* whether those facts implicate the Fourth Amendment and, if so, whether the officers unlawfully infringed upon an area protected by the Fourth Amendment." *Id.* (quoting *Cantrell*, 65 Va. App. at 56); *see also Moreno v. Commonwealth*, 73 Va. App. 267, 274 (2021) ("[We] review[ ] *de novo* the overarching question of whether a search or seizure violated the Fourth Amendment." (quoting *Williams v. Commonwealth*, 71 Va. App. 462, 475 (2020))).

### B. Motion to Suppress the Fruits of the Unconstitutional Seizure

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Carr argues on appeal that the circuit court erred in denying his motion to suppress because Deputy Stroop unreasonably seized him without a warrant and without reasonable, articulable suspicion that he was engaged in criminal activity. *See Long v. Commonwealth*, 72 Va. App. 700, 712 (2021) ("If a police officer has reasonable, articulable suspicion that a person is engaging in, or is about to engage in, criminal activity, the officer may detain the suspect to conduct a brief investigation without violating the person's Fourth Amendment protection against unreasonable searches and seizures." (quoting *McGee v. Commonwealth*, 25 Va. App. 193, 202 (1997) (*en banc*))). "A reasonable, articulable suspicion is 'a particularized and objective basis for suspecting the person stopped of criminal activity.'" *Id.* (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). To determine whether a police seizure is reasonable under the Fourth Amendment, this Court considers the totality of the particular circumstances at the time of the seizure. *See Harmon v. Commonwealth*, 15 Va. App. 440, 445 (1992).

We hold that Deputy Stroop's detention of Carr violated his Fourth Amendment right against unreasonable seizures because, at the time of the seizure, there was no particularized,

objective basis for suspecting Carr of criminal activity.[8] Deputy Stroop detained Carr and Turay when they were merely walking down the road in a residential neighborhood. The evidence does not even support a finding that Carr and Turay were walking away from, rather than toward, the scene of the robbery. And the circuit court's finding that "there were no other people out in the neighborhood" when Carr and Turay were walking down the street is not a reasonable inference from the only record evidence on that issue—that there were not a lot of people out on the street at that time. Although this Court defers to the circuit court's factual findings, we are not bound by unreasonable inferences that are not supported by the evidence. *See Potts v. Commonwealth*, 12 Va. App. 1093, 1099 (1991). As Deputy Stroop testified, the only reason he detained Carr and Turay was that he thought they matched the description of the suspects in the BOLO. Yet Deputy Stroop could not recall the specifics of the BOLO description, which included a vague description of clothing but did not include a description of any suspect's height, weight, build, hair style, facial characteristics, or any other distinguishing physical features apart from race (Black) and gender (male).

In fact, the record shows that Carr and Turay did not match the extremely vague BOLO description of "three armed Black males wearing black sweatshirts." First, there were only two of them, not three. Second, neither Carr nor Turay appeared to be armed, and neither was armed. Third, Sergeant Lemons reported that neither Carr's nor Turay's clothing matched the suspects' clothing description in the BOLO. When Carr was detained, he was wearing a white top and light gray pants. Carr was not wearing a black sweatshirt and, moreover, he was not wearing black at

---

[8] Judge Chaney would also hold that at the time of the seizure, Deputy Stroop lacked reasonable, articulable suspicion to seize Turay.

all.[9]  Significantly, although the circuit court found that "the Defendants at the time [Deputy] Stroop encountered them, matched the description in sex, race, and *some of the clothing*," none of Carr's clothing was found to match the BOLO description at all.  (Emphasis added).  Thus, Carr only matched the BOLO description of the suspects' race (Black) and gender (male).  Therefore, when Deputy Stroop seized Carr "because [he] matched the description that [Deputy Stroop] heard over the radio," Carr was—unlawfully—seized because he is a Black male.

Under the totality of the circumstances here, Deputy Stroop's observations of Carr did not provide a particularized, objective basis for suspecting Carr's involvement in the robbery or any other criminal activity.  Carr was not wearing or doing anything that warranted suspicion of criminal activity.  The observation of a Black man walking late at night in cold weather in a residential neighborhood six to ten blocks from where a crime was committed thirty minutes earlier does not give rise to reasonable, individualized suspicion of criminal activity.  *See McCain v. Commonwealth*, 275 Va. 546, 552 (2008) ("The character of the location and the time at which a person is observed are relevant factors, but they do not supply a particularized and objective basis for suspecting criminal activity on the part of the particular person stopped." (citing *Brown v. Texas*, 443 U.S. 47, 51-52 (1979); *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000))).  Because there was no particularized, objective basis for suspecting that Carr was engaged in criminal activity, Deputy Stroop's seizure of Carr lacked articulable, reasonable suspicion that Carr was engaged in criminal activity.  Thus, we conclude that the circuit court erred in denying Carr's motion to suppress the

---

[9] In *Turay*, Judge Chaney would find that the circuit court improperly abbreviated the BOLO's description of the suspects' clothing from "wearing black sweatshirts" to "wearing black," ignoring Sergeant Lemons' uncontradicted clarifications of the BOLO's clothing description.  Based on this abbreviated description, the circuit court concluded that "Turay's clothing was black, matching the description heard by Deputy Stroop."  However, according to the official police report by Sergeant Lemons—the officer who issued the BOLO and subsequently observed Carr and Turay at the detention site—neither Carr's nor Turay's clothing matched the BOLO's description of the suspects' clothing.  Officer Mawyer testified that when Turay was detained, he "was wearing a black jacket with a distinct red stripe . . . down the sleeves."

fruits of the police officers' Fourth Amendment violation.[10] S*ee Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963).  Although some incriminating evidence was found on Carr after he purportedly consented to the search, such purported consent was tainted and rendered invalid by his unlawful detention.  *See Davis v. Commonwealth*, 37 Va. App. 421, 435 (2002).  "Consent to search obtained as the result of an illegal detention is 'not an independent source of the evidence, but rather [is] an exploitation of the unlawful [stop].'"  *Id.* (alterations in original) (quoting *McGee*, 25 Va. App. at 204).  Therefore, the evidence found pursuant to Carr's purported consent also should have been suppressed as fruits of the unconstitutional seizure.  *See id.*

Contrary to the dissent's representation, we do not conclude "that because the deputy was mistaken in his belief that Carr's clothing matched the description he had been given, we should consider his detention a violation of the Fourth Amendment and suppress the evidence."  The record does not support the conclusion that Deputy Stroop mistook Carr's long-sleeved white top for a black sweatshirt.  Given that Carr's clothing clearly did not match the clothing described in the BOLO, the conclusion that Carr matched the BOLO description was necessarily based on something other than the described clothing.  The BOLO described the suspects as "three armed Black males wearing black sweatshirts."  The only aspect of this description that matched Carr was "Black male."  Therefore, when Carr was seized for having "matched" the BOLO description, Carr was seized because he is a Black male.  The record does not support a finding that this seizure was based on either a reasonable mistake of fact or a good faith belief that the seizure was constitutional.  *Cf. Heien v. North Carolina*, 574 U.S. 54, 57 (2014) (Under the Fourth Amendment, "a search or seizure may be permissible even though the justification for the action includes a reasonable factual mistake."); *Collins v. Commonwealth*, 297 Va. 207, 218

---

[10] Judge Chaney would also hold in *Turay* that the circuit court erred in denying Turay's motion to suppress.

(2019) (holding that suppression is not a proper remedy for a Fourth Amendment violation where the police acted with an objectively reasonable, good faith belief that the search and seizure were constitutional). The evidence obtained from the race-based seizure of Carr must be suppressed to deter such patently unconstitutional seizures that are unsupported by particularized reasonable suspicion of criminal activity.[11]

### III. CONCLUSION

The warrantless seizure of Carr violated the Fourth Amendment because, at the time of the seizure, the police lacked particularized reasonable, articulable suspicion that Carr was engaged in criminal activity. Therefore, this Court holds that the circuit court erred in denying Carr's motion to suppress the fruits of the unconstitutional seizure. Accordingly, this Court reverses the circuit court's decision denying the motion to suppress, vacates Carr's convictions,

---

[11] Judge Chaney would also conclude in *Turay* that the joint seizure of Carr and Turay was a patently unconstitutional race-based seizure and the evidence obtained therefrom should be suppressed as the poisonous fruits of unlawful police misconduct. Carr and Turay were jointly seized based on a "very general description" of "three Black males wearing black sweatshirts." Even if Turay was wearing a garment that was describable as a "black sweatshirt," wearing such a non-distinctive garment—without more—does not support a finding of particularized reasonable suspicion of criminal activity. "In the absence of other circumstances that provide sufficient particularity, a generalized description applicable to large numbers of people contradicts the Fourth Amendment's jurisprudence demanding specificity and will not suffice to justify the seizure of any individual." *Armstrong v. United States*, 164 A.3d 102, 108 (D.C. 2017) (citations omitted) (holding that the lookout description was insufficiently particularized where the description consisted of "a white car, possibly a Mercury Sable, with tinted windows and two black males"). Here, the BOLO description of "Black males wearing black sweatshirts"—or, according to the majority in *Turay*, the BOLO description of "Black males wearing black"—lacks the particularized specificity necessary to warrant the seizure of any person. The joint seizure of Turay and Carr was unconstitutional because the totality of the circumstances did not give rise to "a particularized and objective basis" for suspecting each of them of criminal activity. *See Ornelas*, 517 U.S. at 696.

and remands to the circuit court for further proceedings not inconsistent with this opinion, allowing Carr to withdraw his guilty pleas pursuant to Code § 19.2-254.[12]

*Reversed and remanded.*

---

[12] Judge Chaney would also reverse the circuit court's judgment in *Turay* and would vacate Turay's convictions and remand to the circuit court to allow Turay to withdraw his guilty pleas pursuant to Code § 19.2-254.

Petty, S.J., dissenting.

In the late evening hours of a cold February night, Augusta County Deputy Sheriff Stroop received word that there had been a robbery committed at a nearby location in Waynesboro. After stopping by the scene of the crime, Deputy Stroop began patrolling the area in an attempt to locate the suspects. He had been given a cursory description of the suspects: three Black males wearing black.

According to the findings by the trial court, six to ten blocks from the crime scene Deputy Stroop saw two Black males in a residential neighborhood. There were no other people out in the neighborhood at the time. From his patrol car, it appeared to the deputy that the two individuals matched the description he had received.

After mentally noting that the two individuals matched the description, Deputy Stroop did what any well-trained police officer would do; he detained the individuals to allow him to confirm or dispel his suspicion that they were the suspects. Now, the majority concludes that because the deputy was mistaken in his belief that Carr's clothing matched the description he had been given, we should consider his detention a violation of the Fourth Amendment and suppress the evidence. I disagree. I believe that the trial court got it right when it said "[g]iven the totality of these facts, it would have been a dereliction of Deputy Stroop's duties as a law enforcement officer to have ignored the Defendants walking down the street without making an investigatory

stop." Thus, for the reasons more fully set out in *Turay v. Commonwealth*, No. 0868-21-3

(Va. Ct. App. Oct. 18, 2022) decided this day, I respectfully dissent.[13]

---

[13] The underlying foundation of the majority's opinion is that the clothing worn by Carr and Turay was not identical to the clothing Stroop was told the suspects were wearing. While true, there is no evidence that Deputy Stroop was less than honest in his belief that Carr and Turay matched the description. At best, Deputy Stroop made a mistake. As noted in *Turay*, an honest mistake of fact does not warrant the suppression of incriminating evidence. "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them fair leeway for enforcing the law in the community's protection." *Turay*, slip op. at ___ n.12 (quoting *Heien v. North Carolina,* 574 U.S. 54, 60-61 (2014) (internal quotation marks omitted)).

Furthermore, I cannot fathom why an innocent mistake should trigger the "heavy costs of suppressing the truth." *Collins v. Commonwealth*, 297 Va. 207, 215 (2019) (internal quotes and citations omitted).

> The [exclusionary] rule . . . seeks to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence. Only in such circumstances can the violation be deemed patently unconstitutional or be characterized as flagrant conduct, thereby justifying exclusion.

*Id.* (internal quotation marks and citations omitted).

This is simply not that case.